CHICAGO, MILWAUKEE AND ST. PAUL RAILROAD COMPANY

*v.*

MARGARET DUMSER.

*Filed at Ottawa March 26, 1884.*

1. FENCING RAILWAY TRACKS—*constitutionality of the statute requiring that to be done.* Under the police power the State has the undoubted right to require all railway corporations to inclose their roads with a suitable and sufficient fence, as a matter of public safety. Such regulations tend to the safety of persons and property, and are for that reason lawful.

. 2. In what manner and to what extent railway corporations shall be required by law to inclose their tracks, and where it shall be done, would seem to be ordinarily within legislative discretion.

3. SAME—*as to excepted places—railway stations not within a city or village.* The statute requiring railway corporations to fence their tracks having excepted certain places, as, public road crossings, and within such portion of cities and incorporated towns and villages as are or may be laid out and platted into lots and blocks, etc., this court is not disposed, if it has the power, to extend the exception to cases not enumerated, as a matter of law, without proof of facts showing a necessity for relieving such corporation from this duty.

4. Where a railway corporation has a station at a place on its road where trains stop to receive and discharge passengers and freight, which is not in a city or incorporated town or village, laid out and platted into lots and blocks, and has side-tracks at such station, this court can not, as a matter of law, hold that it is exempted from fencing its track at such station; and if stock gets upon its track for want of such fence, and is killed, the corporation will be liable to the owner for the injury.

5. The law is well settled, that when no reason arising from public necessity exists for keeping a railway track open at any given point, whether within or without the corporate limits of a city or village, all railroad corporations must conform to the statute, and fence their tracks, or answer for damages that may result from the omission of that duty. If the courts can relieve from this duty, the evidence must present facts showing a great public necessity for not fencing the track at the particular place.

6. STATUTES—*rule of construction—enforcing them as written.* Where a statute is expressed in clear and precise terms, and its sense is manifest, and it leads to nothing absurd, or where its provisions, if literally applied, will work no palpable injustice, nor contravene any imperative public exigency, there is no reason for not adopting the sense it naturally presents, and it should be enforced as it is plainly written.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. C. W. UPTON, Judge, presiding.

This action was commenced by Margaret Dumser, before a justice of the peace, against the Chicago, Milwaukee and St. Paul Railroad Company, to recover the value of a cow killed by the cars or engine on defendant's road. On the trial before the justice of the peace plaintiff recovered a judgment against defendant. On the appeal of defendant a trial *de novo* was had in the circuit court, where plaintiff again recovered a judgment. This latter judgment was affirmed in the Appellate Court for the Second District. A majority of the judges of the Appellate Court having certified that in their opinion the case involves questions of law of such importance, on account of principal and collateral interests, as that it should be passed upon by the Supreme Court, defendant brings the case to this court on its further appeal. The judges of the Appellate Court also certify the ground of granting the appeal, which is, the "great importance of having a decision of the Supreme Court upon the question as to whether, under the existing laws of Illinois, a railway corporation is obliged to fence the depot grounds and switch limits at all stations, except at the crossings of public roads and highways, and whether such portions of cities and incorporated towns and villages as are or may be laid out and platted into lots and blocks, etc., as appear, only required by section No. 1 of the act in relation to fencing and operating railroads, approved March 31, 1874."

Mr. D. S. WEGG, and Mr. EDWARD C. LOVELL, for the appellant:

It is a general principle of interpretation that all of a statute must be construed together, and while section 1 of the act of 1874, in relation to the fencing and operating rail-

roads, taken alone, would seem to sustain appellee's view, the other sections of the same act, especially those compelling railroads, under severe and stringent penalties, to furnish cars and transport passengers and property to and from all their stations and stopping places, and their general duty to the public as common carriers, compel the conclusion that the statute taken all together, and considered as a whole, will not bear such construction. Rev. Stat. chap. 114, secs. 48–88; Act in relation to fencing and operating railroads, approved March 31, 1874, secs. 22, 23, 25; Act regulating receiving, transportation, etc., of grain, approved April 25, 1871, secs. 1, 3, 5.

The principle that the proper test as to whether a particular place ought to be fenced by a railroad company is the public character of the place, is deducible from numerous decisions of this court. *Toledo, Wabash and Western Ry. Co.* v. *Chapin* 66 Ill. 504; *Galena and Chicago Union R. R. Co.* v. *Griffin,* 31 id. 303; *Great Western R. R. Co.* v. *Morthland,* 30 id. 451.

The principle that a statute which in general terms imposes on the railroad ·company the duty to fence is construed as allowing exceptions required by public necessity and convenience, is recognized by the courts of last resort in several of the States, and by the best writers on this branch of the law. It is immaterial whether much or little business is transacted at any particular point. Pierce on Railroads, (ed. of 1881,) 420, 421; *Lloyd* v. *Pacific R. R. Co.* 49 Mo. 199; *Swearingen* v. *Railroad Co.* 64 id. 73.

The courts of other States, under similar statutes, have made exceptions as to depot grounds, with a view to the public convenience and necessity, as well as public policy. *Davis* v. *B. and M. R. R. Co.* 26 Iowa, 549; *Durand* v. *C. and N. W. Ry. Co.* 26 id. 559; *Smith* v. *C. R. I. and P. Ry. Co.* 34 id. 506; *Latty* v. *B. C. R. and N. Ry. Co.* 38 id. 250; *Cleaveland* v. *C. and N. W. Ry. Co.* 35 id. 220; *I. and C. R. R.*

*Co.* v. *Kinney*, 8 Ind. 402; *I. and C. R. R. Co.* v. *Oestel*, 20 id. 231; *I. and St. L. R. R. Co.* v. *Christy*, 43 id. 144; *Jeffersonville Co.* v. *Beatty*, 36 id. 15; *P. C. and St. L. Ry. Co.* v. *Crandall*, 58 id. 365; *Ohio Ry. Co.* v. *Rowland*, 50 id. 354; 1 Thompson on Negligence, 519, sec. 24; *Flint and P. M. R. R. Co.* v. *Lull*, 28 Mich. 510; 12 id. 596; 7 Am. & Eng. Railroad Cases, 545.

Mr. D. B. Sherwood, for the appellee:

The appellee's right to recover is warranted by section 48, chap. 114, page 848, of Hurd's Statutes of 1881. The argument of appellant's counsel relative to the obnoxious features of this act, as they affect public policy, would apply with greater force if they could be applied to a different state of facts. The *locus in quo* is not an incorporated city, a village or a town, laid out and platted into lots and blocks; neither is it a city or village in fact, but is simply a station-house on the line of this road, without any public places of business about it.

The cases cited by appellant are not applicable, for this and the further reason that they are based on different statutes. Our present statute is too plain and unambiguous to be the subject of construction. Its meaning is plain and evident to any one.

Mr. Justice Scott delivered the opinion of the Court:

No negligence is imputed to defendant in respect to the accident that resulted in injury to plaintiff's property, unless it was the omission to fence its track at the point where the animal was killed. Section 1 of the act of 1874, in relation to "fencing and operating railroads," as amended by the act of 1879, makes it the duty of every railway company, within six months after any part of its line is open for use, to erect, and thereafter maintain, fences on both sides of its road, or so much thereof as is open for use, suitable and

sufficient to prevent the ordinary farm stock from getting on such railroad, "except at crossings of public roads and highways, and within such portions of cities and incorporated towns and villages as are, or may hereafter be, laid out and platted into lots and blocks." Provision is made for gates or bars at farm crossings, and it is also made the duty of such corporations, where the same has not been done, to construct, and thereafter maintain, suitable and sufficient cattle-guards at all road crossings. Any failure to comply with the provisions of the statute in this respect will subject the company to the payment of all damages which may be done by the "agents, engines or cars" of such corporation, to cattle, horses, sheep, hogs, or other stock. The only question made is, whether plaintiff's cow was killed at a point or place where it was the duty of the defendant railway company to inclose its track with a suitable and sufficient fence to prevent stock from getting on it. The question raised is purely one of law, and involves a construction of a section of the statute in regard to "fencing and operating railways" not heretofore considered by this court.

The point where plaintiff's cow was killed was eighty rods east of a station on defendant's road called "Dumser," but west of the east end of a switch at that station. It is admitted "Dumser" is not an incorporated city, village or town, and has never been laid out and platted into lots and blocks, and neither is it a city or village in fact, but defendant has a station-house at that point, and stops its trains there for receiving and discharging freights and passengers. There is a switch at this point about two thousand feet long, and extends on both sides of the station-house, about one-third on west and two-thirds on east of the station. The value of the cow killed was agreed upon, and also that defendant had been operating its road more than six months prior to the accident, and that it had no fence on the north side of its track, where the cow got upon the track or was killed.

It is not claimed the point where the cow was killed is one of the excepted places mentioned in the statute, where the company is not required to fence its track.   As has been seen, it was not within the limits of any city or village, nor had the ground been platted into "lots or blocks."   The argument is, that as the company had a station at the place where the injury was done,—where it stopped its trains to receive and discharge freights and passengers,—a public necessity arises for keeping the grounds adjacent to the depot open, and for that reason it could not have been the intention of the legislature the company should fence its track at such a place. The legislature has seen fit, in absolute terms, to limit the exceptions to the statutory requirement that all railway companies shall inclose their tracks with a suitable and sufficient fence, to the "crossings of public roads and highways," and to such portions of cities and villages as have been, or shall hereafter be, laid out and platted into "lots and blocks," and the courts would be reluctant to enlarge, by construction, the number of excepted places,—most certainly, unless where the literal application of the statute would work such great public inconvenience it would be held the legislature could not have intended it should apply.   It is conceded that under the police power the State has the undoubted right to require all railway corporations to inclose their roads with a suitable and sufficient fence, as a matter of public safety.   Such regulations tend to the security of persons and property, and are, for that reason, lawful.   In what manner and to what extent railway corporations shall be required by law to inclose their tracks, and when it shall be done, would seem to be ordinarily within legislative discretion.

A statute of the State of Indiana gave the owner of stock killed on a railway a right of action against the company, without regard to the question whether such injury was the result of willful misconduct or negligence, or the result of unavoidable accident.   It was, however, provided, the act

should not apply to any railroad securely fenced in, and such fence properly maintained by such company. Although this statute is general, and contains no exception, it was held in *S. and Ind. R. R. Co.* v. *Shimer*, 6 Ind. 141, the legislature did not intend to authorize railroad companies to inclose streets in a town against the use of the public, and that a literal construction of the statute would lead to an absurdity. In that case the animal was killed within the corporate limits of the town of Lafayette, at a place where the railroad track crossed one of the streets of the town, and it was ruled it would not have been lawful to erect a fence at that point, and that the want of such fence was not the cause of such accident. In the case of *Ind. and Cin. R. R. Co.* v. *Kinney*, 8 Ind. 402, it was held, under the same statute cited in *S. and Ind. R. R. Co.* v. *Shimer*, a railroad company would not be liable for stock killed or injured at a place on their road where a fence ought not to be erected, unless the injury was negligently or willfully done, and that an open space in front of a mill standing within fifty feet of the track is such a place. In the case of *Ind. and Cin. R. R. Co.* v. *Parker*, 29 Ind. 471, it was held, as in the other cases cited, the statute did not apply to injuries done at a point where it would be illegal or improper for the railroad company to maintain fences, such as road and street crossings, but that it was not every place within the corporate limits of a town or city that is within the exception. The exception allowed would be as to places where it would be improper to fence the track, whether within or without the corporate limits of cities or villages. In construing their own statute on the same subject, and which is not unlike the Indiana statute, in *F. and P. M. R. R. Co.* v. *Lull*, 28 Mich. 510, the court thought the rule established by the case last cited was a satisfactory one,— that it expressed the limits of the exceptions arising under the statute accurately, and a track within the corporate limits of a city or town, at a point where no reason arising from

public necessity existed for keeping it open, was as much within the statute as a track elsewhere. It seems the courts of Missouri and Iowa have followed closely the rule established by the cases *ut supra,* in construing similar statutes on the same subject. (*Lloyd* v. *Pacific R. R. Co.* 49 Mo. 199; *Davis* v. *B. and M. R. R. Co.* 26 Iowa, 549; *Cleaveland* v. *C. and N. W. R. R. Co.* 35 id. 220.) It is seen it is held by these courts, that notwithstanding the statute makes railroad corporations liable for injuries done to stock unless their tracks are inclosed with suitable fences, yet they are not bound to fence their tracks at places where it would be improper to do so on account of the great public inconvenience it would occasion, and hence are not liable because of the omission, unless guilty of negligence or willful misconduct in regard to the accident that caused the injury. The reason for the rule adopted in such cases is well stated in *The People* v. *Davenport,* 91 N. Y. 574, where it is said, a "principle of construction of universal authority is that which requires the court to limit and restrict the operation of a statute, when its language, if applied in its literal sense, would lead to an absurdity or manifest injustice." The same rule of construction had been previously adopted by this court in *Perry County* v. *Jefferson County,* 94 Ill. 218. On the other hand, the law is equally well settled that where no reason arising from public necessity exists for keeping it open at any given point, whether within or without the corporate limits of a city or village, all railroad corporations must conform to the statute, and fence their tracks, or answer for damages that may result from the omission of that duty.

It will be noticed the statute of this State in relation to fencing railroads is more definite in its provisions than that of any other State on the same subject to which the attention of the court has been called. In the statutes construed in the cases cited, no exceptions to the general provision the railroad track shall be inclosed, seem to be enumerated; but

in this State the excepted places are stated to be at "crossings of public roads and highways," and within such portions of cities and incorporated towns and villages as are, or may hereafter be, laid out and platted into "lots and blocks." This is a clear legislative expression as to what places the public convenience demands a railroad track shall be kept open. While this expression of the legislative will may not absolutely forbid any further restrictions as to the application of this statute as it is written, there are many cogent reasons why the courts would hesitate to go further than the legislature has done, and other points will not be deemed excluded from the general provisions of the statute, unless for the most satisfactory reasons. It often happens expressions used in statutes are to be regarded as restrictive, and are intended to exclude all things not enumerated. And so in the construction of statutes, as well as deeds and other written instruments, the maxim, *expressio unius est exclusio alterius,* is of frequent application, and often assists to arrive at the intention of the legislature, which it is always desirable to do. But at all events, where a statute is expressed in clear and precise terms, where the sense is manifest, and leads to nothing absurd, or where its provisions, if literally applied, would work no palpable injustice, nor contravene any imperative public exigency, there can be no reason not to adopt the sense it naturally presents. In such cases there can be no necessity for restricting its operation, and the statute should be enforced as it is plainly written. *Newell* v. *The People,* 7 N. Y. 9 ; Potter's Dwarris, 145.

The validity of this statute as a police regulation is not doubted, but it is attempted to make an exception to its general provisions,—which it is conceded the legislature has not done,—that would relieve a railroad corporation from the duty to fence its track at a depot located on ground not platted into lots and blocks, and at a point where there is in fact no city or village, for the reason the public convenience re-

quires the track to be kept open at such a place. This, it is thought, can not be done,—certainly not on the record now before this court. There is nothing in the evidence in this case that shows any reason, arising from public convenience or otherwise, that requires the track either east or west of this station-house should be left unfenced. That necessity, if it existed at all, should be made to appear from the evidence by the defendant corporation seeking to be relieved from a duty imposed by a public statute. In the absence of proof it will be presumed the reasons which, in the opinion of the legislature, required railroad tracks to be inclosed with suitable fences to prevent injury to stock, applied here as well as elsewhere. It might be the depot building and platform could be so constructed as to constitute an effectual bar to the approach of stock to the track as a fence would do, and still the front of such building be open to receive and discharge passengers and freights through the building and over the platform, without serious inconvenience to the number of persons that might have occasion to go to or transact business at a country station, as this is. Nothing to the contrary is shown, and no presumptions will be indulged in favor of a party seeking to be relieved from a duty imposed by law, for politic reasons.

But there is another reason why the present judgment should be affirmed. It is agreed it shall not be material where the cow got upon the track, except it was between the switches at "Dumser" station, but that it was killed about eighty rods east of the depot, and that defendant had no fence on either side of its track at that point, which was within the switch limits. Between the depot building and the place where the cow was killed a public highway crosses the railroad grounds and the tracks, from north to south, which highway was not protected by cattle-guards. It is also admitted defendant had no fence on the north side of its track, where the cow got upon the track or was killed. The

evidence does not show at what point the cow got on the track, nor whether it came from the north or the south; but as plaintiff's pasture lands lie north of the track, it is most probable the cow came upon the track from that direction. It may be the cow got on the track at or near the point where it was killed. If it should be conceded the public convenience required the track in the immediate vicinity of the depot building should be kept open, it can not be held as a matter of law, in the absence of any testimony as to the fact, that a like public necessity required the track should not be fenced on either side for a distance of a quarter of a mile at a country station. The fact a switch may extend that far can make no difference. It could be inclosed with a suitable fence as well as the main track.

In any view that can be taken the judgment is warranted by the law and the evidence, and must be affirmed.

*Judgment affirmed.*

Scholfield, Dickey and Craig, JJ.: To the extent that this opinion may be regarded as holding that the law imposes the obligation upon railroad companies of fencing their tracks at such points as stations are located, although not within the limits of incorporated cities and villages, we do not concur in it.