## THE OTTAWA GAS LIGHT AND COKE COMPANY

### *v.*

### NICHOLAS DOWNEY, Collector.

*Filed at Ottawa January 25, 1889.*

1. TAXATION—*capital stock of gas companies—to be assessed by the State Board of Equalization—constitutionality of the statute.* Under the present legislation, (Rev. Stat. 1874, chap. 120, secs. 3, 32 and 33,) the capital stock of gas companies is required to be assessed by the State Board of Equalization.

2. The fourth clause of section 3 of the Revenue law requires that the capital stock of all companies, etc., shall be assessed by the State Board of Equalization, including the franchise, over and above the assessed value of the tangible property of such company, etc. In a proviso it is declared that companies and associations organized for purely manufacturing purposes shall be assessed by the local assessors. Sections 32 and 33 of the same law expressly require the capital stock of gas and other named companies to be assessed by the State Board of Equalization : *Held*, that the including of gas companies in the sections subsequent to section 3, is clear, if not conclusive, proof, that the intention was not to class such companies with those organized for purely manufacturing purposes.

3. The statute, in distinguishing gas companies from purely manufacturing companies, and classing them with banking, mining and other corporations named in section 32 of chapter 120, and in requiring their capital stock to be assessed by the State Board of Equalization, is not in violation of section 1, article 9, of the State constitution.

4. CONSTRUCTION OF STATUTES. When there is no uncertainty or ambiguity in a statute, there is no necessity for judicial construction. Courts can not, as a general rule, disregard the plain language of a statute. It is their duty to accept it as they find it, and enforce it as it is plainly written.

APPEAL from the Circuit Court of La Salle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. BULL & STRAWN, for the appellant.

Messrs. MOLONEY & STEAD, for the appellee.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

By its bill in chancery, appellant sought in the court below to enjoin the collection of a tax assessed against its capital stock by the State Board of Equalization, for the year 1884. The theory of the bill is, that the complainant company is a corporation "organized for purely manufacturing purposes," subject only to assessment by the local assessors, as provided in the fourth clause of section 3, chapter 120, of the Revised Statutes, entitled "Revenue," and that so far as other sections of the Revenue act purport to subject the capital stock of gas companies to taxation, they are unconstitutional and void. A temporary injunction was ordered and issued, but at the final hearing the same was dissolved and the bill dismissed at complainant's costs, and this last order of the circuit court is the only error assigned on the record. There is no dispute as to the facts, and whether or not, under our statute, the capital stock of gas companies is liable to assessment by the State Board of Equalization, is the only question submitted for our decision.

The sections of the Revenue act affecting this question are the third, thirty-second and thirty-third. So much of the third as is pertinent is found in the fourth clause, as follows:

"*Fourth*—The capital stock of all companies and associations now or hereafter created under the laws of this State, (except those required to be assessed by the local assessors, as hereinafter provided,) shall be so valued by the State Board of Equalization as to ascertain and determine, respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association. * * * This clause shall not apply to the capital stock, or shares of capital stock, of banks organized under the general banking laws of this State: *Provided, further*, that companies and associations organized for purely manufacturing purposes, or for printing, or for publishing of

newspapers, or for the improving and breeding of stock, shall be assessed by the local assessors, in like manner as the property of individuals is required to be assessed."

The language of section 32 is as follows:

"Banking, bridge, express, ferry, gravel-road, gas, insurance, mining, plank-road, savings bank, stage, steamboat, street railroad, transportation, turnpike, and all other companies and associations incorporated under the laws of this State, (other than banks organized under the general banking laws of this State, and the corporations required to be assessed by the local assessors, as hereinbefore provided,) shall, in addition to the other property required by this act to be listed, make out and deliver to the assessor a sworn statement of the amount of its capital stock, setting forth, particularly,—

"*First*—The name and location of the company or association.

"*Second*—The amount of capital stock authorized, and the number of shares into which such capital stock is divided.

"*Third*—The amount of capital stock paid up.

"*Fourth*—The market value, or, if no market value, then the actual value of the shares of stock.

"*Fifth*—The total amount of all indebtedness, except the indebtedness for current expenses, excluding from such expenses the amount paid for the purchase or improvement of property.

"*Sixth*—The assessed valuation of all its tangible property.

"Such schedule shall be made in conformity to such instructions and forms as may be prescribed by the Auditor of Public Accounts. In all cases of failure or refusal of any person, officer, company or association to make return or statement, it shall be the duty of the assessor to make such return or statement from the best information which he can obtain."

By section 33 it is provided that the foregoing statement shall be scheduled by the assessor, and the schedule, with the statement, returned to the county clerk, to be by him forwarded to the Auditor. The Auditor shall, annually, on the

meeting of the Board of Equalization, lay before it such schedules and statement, "and said board shall value and assess the capital stock of such companies or associations in the manner provided in this act."

Taking the language of section 32 as it reads, together with the provisions of section 33, and the first paragraph of clause 4 of section 3, there is no ground for controversy on the question submitted. These sections as effectually provide for the assessment of the capital stock of gas companies, as they do for that of banking, bridge, or other companies named in section 32. So far there is no uncertainty or ambiguity in the statute, and therefore no necessity for construction. Courts can not, as a general rule, disregard the plain language of a statute. It is their duty to accept it as they find it, and enforce it as plainly written. Cooley's Const. Lim. 55; *Foley* v. *People*, Breese, 57; *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Dumser*, 109 Ill. 402, citing *Newell* v. *People*, 7 N. Y. 9; Potter's Dwarris, 145.

But it is said, gas companies are organized for purely manufacturing purposes; that by the provision in clause 4, section 3, such companies are to be assessed only by the local assessors, and therefore that provision and section 32 are in conflict; and it is insisted that in order to harmonize the two sections, 32 should be read omitting the word "*gas*" in the first line. Admitting the premises to be correct, the conclusion does not follow. Nor does it necessarily follow, that because gas companies may fall within the general definition of manufacturing companies, the legislature therefore intended to include them in the said proviso in section 3. The fact that by plain and unequivocal language in the subsequent sections 32 and 33, provision is made for assessing their capital stock, is clear, if not conclusive, proof, that the intention was not to class such associations with those organized for purely manufacturing purposes, and the decision of this branch of the case might safely rest on this ground alone.

Counsel for appellant earnestly contend, that by comparing the law in force, with the act of 1872, to which it is an amendment, it will appear that gas companies are mentioned in section 32 by an oversight on the part of the legislature. On the other hand, appellee's counsel maintain, that by the same means it will be made clear that the intention was to subject their capital stock to assessment by the Board of Equalization, and in support of that view cite, by way of argument, a very clear and satisfactory opinion rendered by Judge Blodgett, in *Williams* v. *Rees,* 9 Biss. 405. We have examined the two acts with reference to what is said in support of the respective positions of counsel, and are unable to find anything in them to justify the construction contended for by appellant. Section 32 of the act of 1872 was in the following language: "Banking, bridge, express, ferry, gravel-road, gas, insurance, manufacturing, mining, plank-road, savings bank, stage, steamboat, street railroad, transportation, turnpike, and all other companies and associations incorporated under the laws of this State, (other than banks organized under the general banking laws of this State,) shall, in addition to the other property required by this act to be listed, make out and deliver to the assessor a sworn statement of the amount of capital stock," setting forth particularly, etc. When this section was adopted, the legislature evidently understood gas companies to be distinguishable from manufacturing companies, else why name both? If manufacturing companies were understood to include gas companies, why should the latter be expressly named? When the subsequent legislature took manufacturing companies out of that section, and transferred them to the proviso in clause 4 of section 3, and left gas companies in section 32, it must have intended to treat the two differently, still understanding the former did not include the latter.

We are satisfied those companies are not within the intent and meaning of clause 4 of section 3, but were intentionally left by the legislature in section 32. What consideration may

have moved the General Assembly to distinguish these from other manufacturing companies,—whether because of special privileges sometimes accorded them in the use of streets, to convey, by pipes, gas to consumers, or because, owing to the peculiar nature of their product, it can not be subjected to assessment and taxation as can the articles made by other manufacturing companies,—we do not deem it important to consider. We think the legislative will sufficiently appears in the act itself, and especially when considered with reference to the act to which it is amendatory.

The remaining question is, does the statute, thus understood, contravene section 1 of article 9 of the constitution of this State? We have already seen that the legislature has distinguished gas companies from purely manufacturing companies, and, for the purpose of taxing their capital stock, classed them with banking, mining and other corporations mentioned in section 32, *supra*. If we are correct in this conclusion, the case of *Coal Run Coal Co.* v. *Finlen*, 124 Ill. 666, is directly in point, and decisive of the question here presented. There the coal company sought to enjoin the extension of a tax against its capital stock and franchise, assessed by the State Board of Equalization, on the ground that the statute was unconstitutional; but we held otherwise, adhering to what had been previously decided in *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 579.

The decree of the circuit court is affirmed.

*Decree affirmed.*