## Toledo, St. L. & K. C. R. R. Co. v. Thompson.

1. *Railroads—Failure to Fence Track, etc.—Cattle Guards.*—An action was brought against a railroad company for killing domestic animals by a freight train at a small unincorporated village on the line of its road at which it had a station house and stopped its trains to receive and discharge freight and passengers, and where it was claimed the animals got upon the track. It was conceded that at the place in question the road had been in use for more than six years, and that it was not a place specifically excepted from the statutes, but it was contended that the company's duty to afford the public reasonable safety and despatch in the transaction of business, and provide a ready and convenient means of access to its station, authorized the company to omit the fence and cattle guards at the place in question. *It was held* that by law a railroad company was not bound to fence its depot grounds and the tracks and switches adjacent thereto in towns and villages, so far as their proper use and convenience requires that they should be left open for the transaction of its business with the public, but the question for determination from the evidence whether such use and convenience did require that places like the one in the case at bar should be left open was one of fact, and properly left to the jury.

**Memorandum.**—Action for killing domestic animals. Appeal from a judgment for plaintiff, rendered by the Circuit Court of Coles County;

the Hon. James F. Hughes, Circuit Judge, presiding. Heard in this court at the May term, A. D. 1891, and affirmed. Opinion filed October 24, 1892.

## Appellee's Statement of the Case.

Appellee's horse was killed by a train at Fair Grange, an unincorporated village, on appellant's railroad. At that place the railroad, running north and south, crosses a public highway, running east and west. The railroad is fenced on the west, but not on the east, for a distance of 470 feet north of the highway. From that point there is a fence on the east side also, but no cattle guard or wing fences to keep stock out of the lane thus formed, for a distance of 236 feet north of the point where the fence on the east side of the track begins. Appellee's horse came on the track at a point north of the mouth of this lane and was struck by an engine and killed. A wing fence and cattle guard would have prevented the horses from getting on the track at that point and being killed.

## Appellant's Brief.

The burden is upon appellee to show by a preponderance of the evidence that his horse got upon the track at a point where the company was required to have a fence, and had failed to have such fence, or had only a defective one. It is not sufficient to show that the horse was killed at such point, but it must appear that it got upon the track at such a place. Wabash Ry. Co. v. Charles Brown, Admr., 2 Ill. App. 516; Ill. Cen. Ry. Co. v. Swearingen, 33 Ill. 289; Ill. Cen. Ry. Co. v. Swearingen, 47 Ill. 206; G. W. Ry. Co. v. Hawks, 36 Ill. 282; St. L., A. & T. H. Ry. Co. v. Elisha Linder, 39 Ill. 433; T. P. & W. Ry. Co. v. Darst, 51 Ill. 365.

There is no evidence in this record as to where the horse got upon the track. The evidence is conclusive that Fair Grange is a station upon appellant's road, and the needs of the public require that the station and depot grounds be left open, and therefore could not and should not be fenced. C., B. & Q. Ry. Co. v. Hans, 111 Ill. 114.

Under a similar statute to ours, it has been held in Indiana that roads need not be fenced or cattle guards constructed where such construction would be dangerous to the employes.    Lake E. & W. R. R. Co. v. Knable, 94 Ind. 454; E. & T. H. R. R. Co. v. Willis, 93 Ind. 507.

WILEY & NEAL, attorneys for appellant.

### APPELLEE'S BRIEF.

It has been decided that a railroad company is not bound to fence up " such parts of its depot grounds as are required to be open for the convenience of the public in the use of the road."    C., B. & Q. R. R. Co. v. Hans, 111 Ill. 114.

F. K. DUNN, attorney for appellee.

OPINION OF THE COURT, *the Hon. George W. Pleasants, Judge.*

Appellee's horse was struck and killed by a freight train at Fair Grange, a small unincorporated village on the line of appellant's railroad, at which it had a station house and stopped its trains to receive and discharge freight and passengers.    He claimed that it got upon the track through the neglect of appellant to fence its road at that point, in violation of the statute, and brought this action before a justice of the peace, on the trial of which, upon appeal, he obtained a verdict and judgment thereon for $65 damages.

It is conceded that at the place in question the railroad had been in use more than six months, and that the place was not specifically excepted by the statute; but it is contended, upon authority of C., B. & Q. R. R. Co. v. Hans, 111 Ill. 119, that its duty to " afford the public reasonable safety and despatch in the transaction of business " and " provide a ready and convenient means of access to its station " authorized the company to leave it open as it was. And whether it did, was the only question really in dispute in the case.

We fail to get from the testimony and plat introduced an

exact idea of the location of the tracks, buildings and fences, but understand the general situation to have been as follows :

The village, consisting of half a dozen dwellings and two or three stores, was all east of the railroad grounds. The track, running north and south, crossed at the station a public highway running east and west—the station being in the southwest corner made by the intersection, west of the track and south of the highway. A side track or switch was laid west of the main track, and was properly fenced on the west side of it. An elevator and a corn crib were on the east side of the main track, north of the highway. A private fence inclosed land of Mr. Babb, also lying north of the highway and east of the track, the west line of which fenced the track on the east side from a point ninety-one feet north of the north end or side of the elevator; but between the elevator and that point the railroad was open on that side. Nor was there any wing fence from that point to the track, nor any cattle guard there or at the highway crossing. Thus there was nothing to prevent cattle or horses from going upon the tracks from the east between the elevator and the south end of Babb's west fence, or from passing up the lane formed by that fence and the wire fence on the west side of the tracks, from that opening or from the public highway.

We see no reason, founded on the convenience of the public, for leaving this opening, or for failing to construct cattle guards at the highway crossing. It appears that the business at the elevator was done from the south side of it. There was sufficient access to the depot also from the highway. Indeed, no stress is laid in the argument upon the necessities or convenience of the public. The point urged is that a wing fence from Babb's corner and cattle guards in connection, or cattle guards at the crossing, would have endangered the lives of railroad employes handling cars on the side or switch track; and the assignment of error relied on is the refusal of the court to give an instruction asked, as follows : " That the statute only requires cattle guards at highway crossings, and if you believe from the evidence that the fence on the east side of

defendant's railroad was not the fence of the defendant and that a cattle guard at the south end of said fence would endanger the lives of employes, then the defendant was not required to construct a cattle guard at this point."

At the request of the defendant the court did give an instruction in accordance with the rule announced in C. B. & Q. R. R. Co. v. Hans, *supra*, that " defendant was not bound to fence its depot grounds and the tracks and switches adjacent thereto, in towns and villages, so far as their proper use and convenience require that they shall be left open for the transaction of its business with the public," and properly left it to the jury to determine from the evidence whether such use and convenience did require that they should be left open as they were in this case. This was sufficiently liberal. The jury seem to have found against the defendant upon the question of fact thus submitted, and as we understand the evidence, were warranted in so finding. The refused instruction drew from the supposed convenience of the company a conclusion of law which could properly follow only from that of the public. It was conceded that the south end of Babb's fence was 'not at a " road crossing," where, only, the statute required the company to construct a cattle guard. The instruction, after expressly calling the attention of the jury to this provision of the statute, proceeds with the implication that the killing of plaintiff's horse was attributable to the want of a cattle guard at that point, and confines the case to the question whether the company was " required " to construct one there. It tells the jury it was not so required by the statute, and not otherwise if its construction there would endanger the lives of employes. But it is manifest that to keep cattle or horses off the tracks it would be necessary to have a wing fence and cattle guard there, if there was no fence from Babb's to the crossing, and a cattle guard at the crossing. If the company created this necessity by its own neglect of duty, then it was bound to meet it, at its own risk of the danger to its employes; and whether it did so create it was the real question for the jury, which the instruction excluded. We think it was properly refused. Judgment affirmed.