James E. Finucane, Appellee, v. Chicago & Eastern Illinois Railroad Company et al., Appellants.

RAILROADS—*when obligation to fence, etc., to be determined as a question of fact.* *Held,* under the evidence, that it was a question of fact to be determined by the jury as to whether or not the railroad company, defendant, was under an obligation to erect and maintain fences or cattle-guards at the place where the accident in question occurred; it being contended by such company that the part of the track where the accident occurred was within the limits of its depot grounds and needed for station and depot purposes, etc., and that, therefore, under the law which does not require tracks so situated to be protected, it was not necessary that fences or cattle-guards be maintained.

Action in case. Appeal from the Circuit Court of Williamson county; the Hon. W. W. DUNCAN, Judge, presiding. Heard in this court at the February term, 1909. Affirmed. Opinion filed November 13, 1909.

Finucane v. C. & E. I. R. R. Co., 151 Ill. App. 346.

CLEMENS & SLATER, H. T. DICK and DENISON & SPILLER, for appellants; W. W. BARR, of counsel.

WILLIAM H. WARDER and W. A. SCHWARTZ, for appellee; J. S. KENDALL, of counsel.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

At about two o'clock on the morning of December 25, 1907, a train of the Illinois Central Railroad Company, running south on the tracks of the Chicago & Eastern Illinois Railroad, ran into a drove of horses and mules at Fayville, Illinois, belonging to appellee, killing some and injuring others. Appellee brought suit against both railroad companies, charging in one count of his declaration a failure to erect and maintain fences, and in the second, a failure to provide suitable cattle-guards to keep stock off the track at a road crossing, where the stock in question went upon the track near the station at Fayville. There was a plea of the general issue, a verdict for $4600 damages and $400 attorneys' fees. Motion for a new trial having been overruled, judgment was entered against the defendant railroad companies for $5000, from which both of them have appealed.

The village of Santa Fe was platted about 1859 and when the Chicago & Eastern Illinois Railroad Company ran its track through it, some seven or eight years ago, the name was changed to Fayville. The railroad track at this point which will be here treated as running north and south, is nearly parallel with the Mississippi river. The village, which was unincorporated, contained houses sufficient to shelter fifteen or twenty families, a depot and a postoffice. The station is a flag station, no agent being maintained. By an arrangement with the Chicago & Eastern Illinois Railroad Company, the Illinois Central Railroad Company also used the tracks for certain of its trains. Little attention appears to have been paid to the platted

streets and alleys. There is a railroad depot on the east side of the track and some three hundred feet north of it, west of the track, is the postoffice. Just west of the postoffice is a boat landing on the river bank, connected with the depot by a wagon road which appears, from the plat in evidence, to pass for the most part over platted lots instead of streets. Some 300 feet north of the postoffice there is a switch and from this switch a side track runs north along the east side of the main track for nearly a mile. The depot, postoffice, boat landing, switch and about 100 feet of the south end of the side track are in the plat of the village. About 1600 feet north of this switch another switch track leads off in a southerly direction on the east side of the other tracks, and along this is located a blacksmith shop, coal bins, scales and a power house used by a powder plant located about half a mile northeast of there. The long side track is used for passing trains, switching and sometimes for storage, while freight is unloaded from the side track and switch track near the power house. Appellee, a railroad contractor, working upon a new road near by, had 30 or 40 horses and mules in a corral along a wagon road leading to Olive Branch, south of Fayville. On the night in question, the horses and mules got out of the corral and traveled along the highway to the railroad at the crossing near the depot. They then traveled north on the track or right of way as far as the power house, where they turned and started back south again. When they were on the track between the switch at the south end of the side track and the postoffice, they were struck by an Illinois Central train, coming from the north, and as a result 14 mules were killed and 6 crippled. Three horses were also so badly crippled they had to be killed.

There was no cattle-guard at the street crossing south of the depot, nor between that point and the power house. Nor was there any fence on the river side of the railroad. On the east side of the rail-

road between said points, there was some 600 feet of fencing but it was badly out of repair and was located north of the point where the animals were injured.

Appellants claim that the part of the track where the accident occurred was in the limits of its depot grounds and needed for a station and depot purposes, and therefore it was not necessary that it should be fenced or protected by cattle-guards. Also that cattle-guards between the station and the switch, would have hindered the railroad companies in carrying on their business and endangered the lives and limbs of their employes.

Appellee on the other hand insists that no freight was loaded or unloaded and no business of the railroad companies with the public or with any patron was done between the station and the power house, and that, therefore, the track between the postoffice and the power house should have been protected by fences and cattle-guards.

The statute requires railroads to erect and maintain fences on both sides of its road, except at the crossings of public roads and highways, and within such portion of cities and incorporated towns and villages as are or may be hereafter laid out and platted into lots and blocks, etc., and to maintain cattle-guards at all road crossings. There is nothing in the statute which excuses the company from maintaining fences along that portion of its track which runs through unincorporated towns and villages, but where a railroad company has established a depot and transacts business with the public, it has been held by the courts of this State that it is not bound to fence such portions of its track as are necessary for the convenience of the public in transacting its business with the company. C. M. & St. P. R. R. Co. v. Dumser, 109 Ill. 402; C. B. & Q. R. R. Co. v. Hans, 111 Ill. 114.

In our opinion, the question whether cattle-guards and fences connected therewith, should have been

placed at the point where the injury occurred, is, under the holding of our courts, a question of fact and not of law.

It is true in I. C. R. R. Co. v. Davidson, 225 Ill. 618, cited by appellants, the court held, that the maintenance of cattle-guards and wing-fences at the crossing in question, was a question of law but that was at a place directly within the statute and of course must be controlled by the statutory law covering it. But in locations such as we have under consideration here, the question as to whether or not the railroad company is bound to fence and maintain cattle-guards, depends upon facts and circumstances of the case, and whether these facts and circumstances exist are questions for the jury. T. St. L. & K. C. R. R. Co. v. Thompson, 48 Ill. App. 36; C. C. C. & St. L. Ry. Co. v. Green, 65 Ill. App. 414.

In Wabash R. R. Co. v. Howard, 57 Ill. App. 66, where an accident occurred at a small unincorporated village, it was said by the court: "The doctrine announced in the Hans case was that the railroad company is not required to fence such parts of its depot grounds as are required to be open for the convenience of the public in the use of the road; but we do not understand that the mere convenience of the company is a sufficient reason for not fencing. . . Where a side track is much used for switching purposes, it might be dangerous to employes to have cattle-guards intervening and this might perhaps furnish an excuse for extending the open space, as to which no opinion need be now expressed, but the mere convenience of the company would not be sufficient." In that case the question of the proper use and convenience of the depot grounds, tracks and switch as between the company and the public, was recognized as a question of fact for the jury. While the question whether the place in controversy, where the injuries to the stock occurred, was such as required it to be left open, for the convenience and transaction of business between

the public and the company, and whether the erection of cattle-guards to protect it would have been dangerous to the employes of the company in the necessary discharge of their duties, were close questions, yet these questions of fact were submitted to the jury under proper instructions and the facts are such that we do not feel at liberty to disturb the verdict.

Appellants claim that the court erred in the admission of evidence on behalf of appellee. A witness, in answer to the question "What kind of a night was it?" was permitted to answer, "It was a light, moonlight night," and the same line of investigation was permitted with other witnesses for appellee. The complaint is that, as there was no charge in the declaration of negligent operation of the engine, such evidence could only have been offered to show that the employes of appellant should have discovered the animals on the track and prevented the injury. While the court below might well have sustained the objection to this line of interrogatories, yet we do not think its admission of sufficient importance to warrant the reversal of the judgment, in view of the fact that the court directly instructed the jury at the instance of the defendants, that there could be no recovery in the case, "for any carelessness or negligent running or handling of the train."

Appellants further object that a witness for appellee was permitted to testify that he found blood on the rails and ties. We think this evidence was entirely proper, as tending to determine the place where the animals were killed, which was an important question of proof. Other objections are made to the admission of testimony for appellee, but upon consideration of the same, we do not think they are of material importance.

Appellants also claim that the damages are excessive, but evidence was introduced by appellee which itemized the damages as to each animal killed or injured, the total of which was slightly more than the

amount of the verdict. Appellants introduced no evidence upon this subject, so that the jury could not have reasonably done otherwise than find as they did, as to the amount of damages.

Criticism is made of that portion of the first instruction given for appellee which states, "it is made by said statutes the duty of such railroad company to construct and maintain cattle-guards at all road crossings, suitable and sufficient to prevent such horses and other stock from getting on such railroads." Appellant's criticism of this instruction is that it should have confined the duty to maintain a cattle-guard to the public crossing, south of the depot. The whole instruction, however, was general in its form, purporting to state a portion of the statute in reference to the maintenance of fences and cattle-guards, which it did correctly, and no sufficient reason appears to us why it should be held to be in any manner objectionable. Other objections to instructions are of minor importance, and do not appear to us to be well founded.

The judgment of the court below will be affirmed.

*Affirmed.*

MR. JUSTICE DUNCAN having tried this case in the court below, took no part in the consideration or decision of the same in this court.