THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Plaintiff-Appellee and Cross-Appellant, *v.* CHICAGO TEACHERS UNION, LOCAL 1, AMERICAN FEDERATION OF TEACHERS, *et al.*, Defendants-Appellants and Cross-Appellees.

(No. 58408;

First District (2nd Division)—February 25, 1975.

Joseph M. Jacobs and Judith A. Lonnquist, of Jacobs, Gore, Burns & Sugarman, of Chicago, for appellants.

Michael J. Murray, of Chicago (Richard E. Girard, John J. Dillon, and John E. Wilson, of counsel), for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal arises from a controversy between the Board of Education of the City of Chicago and the Chicago Teachers Union, its officers and members, concerning the legality of the terms which, in their 1971-1972 collective-bargaining agreement, provided for wage increases in 1972 and for binding arbitration. The facts of the case are not in dispute.

Before 1971, all contracts between the Board of Education of Chicago (Board) and the Chicago Teachers Union (Union) were for 1-year terms. For this reason, when the parties began negotiating for the 1971 agreement, they assumed that whatever contract resulted would be for 1 year. However, an impasse developed concerning salary increases, and, as a consequence, representatives of the Board and those of the Union

met with the mayor of Chicago who mediated the areas of disagreement between the parties. The result of this mediation was a proposal that Board and Union enter into a 2-year contract. The proposal was accepted and on February 17, 1971, pursuant to a resolution of the Board, the parties executed an agreement for 2 years from January 1, 1971, to December 31, 1972. Its terms included a wage increase retroactive to January 4, 1971, and provided that effective January 3, 1972, teachers and family instructors were to receive and 8% salary increase; civil service employees and teacher aides, an increase of 7%. Under paragraph 36—3 of the agreement, "[s]alary schedules and compensatory and remuneration provisions in this Agreement shall be subject to the terms, provisions, and conditions of the appropriations therefore contained in the 1971 and 1972 annual and supplemental school budgets." Article 3 governed grievance procedures. Under it, paragraph 3—5 provided for binding arbitration by the American Arbitration Association under its rules. Provision was made for notice of hearings before an arbitrator whose "* * * decision shall be final and binding on the parties."

At the time the parties entered into this agreement, section 34—49 of the Illinois School Code provided that "[n]o contract shall be made or expense or liability incurred by the [Chicago Board of Education] * * * unless an appropriation therefor has been previously made." Board had not made appropriations to cover the 1971 costs of the contract; it did so on January 21 when the 1971 budget was adopted. Section 34—49 contained the additional provision that "[a]ny contract, verbal or written, made in violation of this section is void as to the board, and no moneys belonging thereto shall be paid thereon." (Ill. Rev. Stat. 1969, ch. 122, par. 34—49.) Nevertheless, the 2-year contract was performed in every respect, including payment by the Board of the 1971 pay increases which the parties had agreed were retroactively effective on January 4.

On January 17, 1972, Board adopted its budget for 1972. It did not, however, appropriate funds to pay the 7 and 8% salary increases to teachers, civil service employees and teacher aides. Instead, Board decided to give those employees a 5.5% salary increase. On learning of this decision, Union invoked the grievance arbitration procedures outlined in the 2-year contract. The Board participated in all the stages and when these were exhausted, Union filed a demand for arbitration with the American Arbitration Association as provided in paragraph 3—5 of the contract. From a panel submitted by the Association, Board participated in selecting an arbitrator. When this was done and the cause set for hearing, Board filed a special and limited appearance attacking the jurisdiction of the Association to consider the matters alleged in Union's

demand for arbitration. The arbitration proceedings were held in abeyance; and on July 14, 1972, Board filed a 2-count complaint seeking stay of the arbitration and a declaratory judgment.

In Count I, it was alleged that section 34—49 of the Illinois School Code prohibited the Board from paying for contractual liabilities incurred unless appropriation therefor had been previously made; and since, for 1972 salaries, the only appropriation was for an increase of 5.5%, an arbitrator would have no jurisdiction to enforce the 1971-1972 contract provisions which required salary increases of 7 and 8%. Therefore, Board prayed that the trial court permanently enjoin the arbitration. In Count II, it was alleged that paragraph 3—5 of the 2-year contract which provided for binding arbitration was void because it unlawfully delegated to an arbitrator the statutory powers vested in the Board by which it alone had the authority to determine wages to be paid teachers and those of its employees represented by the Union. To the complaint, as an exhibit, the Board attached a printed copy of the 2-year contract.

Union appeared and filed an answer that admitted negotiation of the 2-year contract, its execution and adoption of the 1971 and 1972 budgets by the Board. Thereafter, the parties submitted briefs. In the one it filed, Board contended that the 1972 wage increases and the binding arbitration provisions in the 2-year contract were illegal. In its brief, Union contended that the wage increases and the binding arbitration provisions were legal. The trial court, after considering the pleadings, the briefs and arguments of counsel, entered an order in which it found that the salary increase provisions in the 1971-1972 contract were in violation of section 34—49 of the Illinois School Code and void because, at the time the contract was made, money to pay the increases had not been previously appropriated by the Board. As to the relief prayed for in Count II, the trial court ruled it was not necessary to determine whether the binding arbitration procedures in the 2-year contract were legal. A permanent injunction was entered under Count I restraining the arbitration, but relief under Count II of the complaint was denied.

Union appeals from the judgment entered under Count I; Board, from the trial court's denial of the relief under Count II.[1] The dispositive

---

[1] Board filed what it called a "Notice of Cross-Appeal." However, Supreme Court Rule 303(a) provides that "[i]f a timely notice of appeal is filed and served by a party, any other party, within 10 days of service upon him, or within 30 days of the entry of judgment, whichever is later, may join in the appeal, appeal separately, or cross appeal by filing a notice of appeal." (Ill. Rev. Stat. 1971, ch. 110A, par. 303.) Board's notice was filed within 30 days of the order from which Union has appealed. Therefore, to avoid questions which can arise if considered as a cross-appeal, we treat Board's application for review as an appeal. See *Kerner v. Thompson*, 365 Ill.

issue in the appeal is whether the salary increases in the 1971-1972 collective bargaining agreement were void under the provisions of section 34—49 of the Illinois School Code.

## I.

■■ The Board of Education of the City of Chicago is a body politic and corporate created to perform governmental functions in connection with the education of children in the school district that consists of Chicago, and it has such powers as are expressly conferred, or such as may be necessary to carry into effect those granted by the legislature. (*Rosenheim v. City of Chicago*, 12 Ill.App.2d 382, 139 N.E.2d 856; Ill. Rev. Stat. 1969, ch. 122, par. 34—2.) In order to enable it to provide public school education to the children of the city, the General Assembly has given the Board specific powers which are not intended to exclude others requisite and proper to the development of a public school system, so long as the exercise of an assertively requisite and proper power is not inconsistent with the code that governs school administration. (Ill. Rev. Stat. 1969, ch. 122, par. 34—18.) Therefore, in resolving the dispositive issue, the question we must decide is whether Board, in entering into the 2-year collective bargaining agreement with Union, acted consistently with section 34—49 of the Illinois School Code. In doing so, we bear in mind that the fundamental object of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute. *People v. Dednam*, 55 Ill.2d 565, 304 N.E.2d 627; 82 C.J.S. *Statutes* § 321 (1953).

■■■ Where the language of a statute is certain and unambiguous, there is no room for construction; our function is to apply it as it was enacted by the legislature, unless it runs counter to some constitutional prohibition. (*Certain Taxpayers v. Sheahen*, 45 Ill.2d 75, 256 N.E.2d 758; *Ottawa Gas Light and Coke Co. v. Downey*, 127 Ill. 201, 20 N.E. 20.) In this case, the statute in question, to the extent with which we are concerned, provided that "[n]o contract shall be made or expense or liability incurred by the board * * * unless an appropriation therefor has been previously made. * * * Any contract, verbal or written, made in violation of this section is void as to the board, and no moneys belonging thereto shall be paid thereon." (Ill. Rev. Stat. 1969, ch. 122, par. 34—49.) In our judgment, the language used is plain; its meaning is obvious. Therefore, this statute is certain and unambiguous. It makes void any contract into which the Board of Education enters without first

---

149, 6 N.E.2d 131; *Peoples Gas Light & Coke Co. v. Hart*, 310 Ill.App. 351, 34 N.E.2d 88; compare *Parish Bank & Trust Co. v. Uptown Sales & Service Co.*, 300 Ill.App. 73, 20 N.E.2d 634.

having made an appropriation therefor. The facts are also certain. The contract was made early in 1971; at that time no appropriation for the 1972 salary increases had been made.

Union, however, urging that the trial court erroneously interpreted this statute, argues that the salary provisions of the 2-year contract were not within its prohibition; that the statute did not void the salary increase provisions because no appropriation of money was required in 1971 for the 1972 salaries; and that in any event, even if the statute were applicable to the salary increases, the contract was voidable, not void. Therefore, Union insists, Board should be estopped from pleading its lack of power to have entered into the contract. In support of its argument, Union cites authorities which we have examined but on which we will not elaborate because, in our judgment, they are inapposite.

■■ A contract expressly prohibited by a valid statute is void, and there is no exception to this rule for the reason that the law cannot at the same time prohibit a contract and enforce it. (*Green v. Hutsonville Township High School District No. 201*, 356 Ill. 216, 221, 190 N.E. 267.) And in such a case, a body corporate like the Board of Education of Chicago is not estopped to dispute the validity of a contract which it had no power to make. (*Eastern Illinois State Normal School v. City of Charleston*, 271 Ill. 602, 111 N.E. 573.) Courts cannot disregard the invalidity of a contract which the legislature has prohibited. See *Board of Education v. Arnold*, 112 Ill. 11, 1 N.E. 163; compare *Beling v. City of East Moline*, 14 Ill.App.2d 263, 144 N.E.2d 865.

In *DeKam v. City of Streator*, 316 Ill. 123, 146 N.E. 550, the city entered into a contract with an engineer to draw plans for a proposed sewer system. At the time, the statute that governed incorporation of cities and villages provided that "[n]o contract shall be hereafter made by the City Council or Board of Trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditures shall have been ordered by the City Council or Board of Trustees or not, unless an appropriation shall have been previously made concerning such expense * * *." (Hurd's Stat. 1917, ch. 24, par. 91.) In a taxpayers' suit to restrain payment to the engineer under the contract, plaintiffs obtained a decree which was reversed by the appellate court. On appeal to the supreme court, it was held that the contract was void because it was entered into before an appropriation therefor had been made. 316 Ill. 123, 132.

■ It is clear that, with one important exception, the statute in *DeKam* was identical with the one before us. The exception is that section 34—49 of the Illinois School Code renders any contract, verbal or written, made

in its violation void; and it expressly prohibits the payment of Board money on such a contract. The record of this case shows that representatives of Board and Union knew of the prohibitions contained in section 34—49. This fact is disclosed by paragraph 36.3 which expressly made the proposed salary increases subject to anticipated 1971 and 1972 annual and supplemental school budgets. However, even if this paragraph had not been included in the 2-year contract, Union, in dealing with Board, a body politic and corporate, was charged with knowledge of the limitations to contract which the law placed on Board and its officials. (*Haas v. Commissioners of Lincoln Park*, 339 Ill. 491, 171 N.E. 526.) These limitations are well known. Reviewing courts of this state have declared contracts void under statutes with language either identical or very similar to that contained in section 34—49. (See *May v. City of Chicago*, 222 Ill. 595, 78 N.E. 912; *Chicago Patrolmen's Association v. City of Chicago*, 56 Ill.2d 503, 309 N.E.2d 3; *Guerine v. City of Northlake*, 1 Ill.App.3d 603, 274 N.E.2d 625.) We conclude, as did the trial court, that the salary increase provisions in the 1971-1972 collective-bargaining agreement between Board and Union were void under the provisions of section 34—49 of the Illinois School Code. Therefore, the portion of the trial court's order that granted Board the relief prayed for under Count I of the complaint is affirmed.

## II.

■■■ Admittedly, this affirmance states a rule that deprives Board of the power to enter into a legally enforceable multiyear contract with its teachers and those of its employees represented by Union without first making an appropriation to pay for the liability incurred under such a contract. Collective-bargaining agreements between school boards and school employees are not against public policy. (*Chicago Division of Illinois Education Association v. Board of Education*, 76 Ill.App.2d 456, 222 N.E.2d 243.) In fact, evolution of contemporary American law strongly suggests that such agreements are necessary for the sound administration of a modern public school system. (See *McLaughlin v. Tilendis* (7th Cir. 1968), 398 F.2d 287; *Classroom Teachers Association v. Board of Education*, 15 Ill.App.3d 224, 304 N.E.2d 516; *Board of Education v. Johnson*, 21 Ill.App.3d 482, 315 N.E.2d 634; *East Chicago Teachers Union, Local No. 511 v. Board of Trustees* (Ind.App. 1972), 287 N.E.2d 891.) And, unquestionably, multiyear contracts can be the source of stability between a public employer and its employees. However, section 34—49 prohibits Board from entering into a contract with Union for more than 1 year, no matter how beneficial such a contract may be to the Chicago school system.

This is not true of other things for which Board must contract in the discharge of its responsibilities. For example, section 34—49 contains exceptions that permit Board to lease real or personal property for any period not exceeding 40 years, contract for more than 1 year to construct buildings, purchase fuel, obtain service for removal of ashes and provide for transportation of pupils. The anomaly of section 34—49 is that while it permits Board to enter into multiyear contracts for mundane matters, it prohibits Board from contracting for more than 1 year with the most important segment of the community with which it deals: its teachers. Nonetheless, as we have said earlier, we cannot disregard a prohibition mandated by the legislature. (See *Botkin v. Osborne*, 39 Ill. 101; *Wells v. People ex rel. Daniels*, 71 Ill. 532.) Therefore, Union's argument urging us to construe section 34—49 so as to validate the 2-year contract with Board is one that will have to be addressed to the legislature.

### III.

In its brief and argument, the issue that Board presents for our review is whether the provisions of the 2-year contract which require compulsory arbitration of disputes concerning salary and compensation of Board employees are invalid delegations to an arbitrator of Board's statutory powers and duties. We are not asked to decide whether refusal of the trial court to pass on the issues presented in Count II of Board's complaint was an abuse of judicial discretion.

■■ Our function as an appellate court is to review the rulings, orders or judgments of the court below, those contained in the record. Issues which the trial court has refused to decide will not be considered by us unless we are asked to decide whether the refusal to act was an abuse of judicial discretion. In such a case, we would not have before us the merits, if any, of the issues on which the trial court refused to act. Our jurisdiction is, in the first instance, appellate; it extends only to those matters in controversy which have been passed on by the trial court. (*Goodrich v. Sprague*, 376 Ill. 80, 86, 32 N.E.2d 897.) Jurisdiction cannot be conferred on us by the parties or by the failure of one of them to call to our attention a jurisdictional defect. (*In re Organization of the Fox Valley Community Airport Authority*, 23 Ill.App.3d 168, 318 N.E.2d 496.) A question concerning our jurisdiction is always open and we may of our own motion dismiss an action where want of jurisdiction appears. See *Weber v. Northern Illinois Gas Co.*, 10 Ill.App.3d 625, 629, 295 N.E.2d 41; *Gatto v. Walgreen Drug Co.*, 23 Ill.App.3d 628, 320 N.E.2d 222.

■■ Our review of the record convinces us that we do not have juris-

diction of Board's appeal because it presents an issue not decided in the trial court and consequently not properly before us. (See *Interlake Iron Corp. v. Dravo Corp.*, 68 Ill.App.2d 167, 215 N.E.2d 137.) Therefore, on our motion, we must dismiss the Board's appeal for want of jurisdiction. See *In re Application of County Collector of Rock Island County*, 3 Ill.App.3d 917, 278 N.E.2d 811.

Judgment of the trial court under Count I, affirmed; appeal under Count II, dismissed.

DOWNING, P. J., and STAMOS, J., concur.