## People's Gas Light and Coke Co. v. Frederick C. Hale et al.

1. CONTRACTS—*Ordinances Granting Franchises to Corporations.*— The ordinance granting a franchise, and under which the gas company in this case operates its plant, constitutes a contract between the company and its assignees on the one part, and the municipality, acting in a representative capacity for the citizens, of the other part, and determines their rights with regard to its subject-matter until changed by the proper authority.

2. CONSOLIDATION OF CORPORATIONS—*Merger of Rights of the Constituent Companies.*—Where two gas companies exercising franchises

People's Gas Light & Coke Co. v. Hale.

under a municipal ordinance are consolidated under the statute, the consolidated company becomes vested with all the rights, privileges and franchises of the constituent companies under the ordinance, and is bound, by all the duties and obligations imposed upon them by such ordinance.

3. ORDINANCES—*Rule of Construction.*—When an ordinance is to be construed as a contract and its words are plain and explicit, courts will not go beyond its wording in construing it.

4. USAGE—*Which Does Not Ripen into a Custom.*—The fact that a gas company for a time furnished illuminating gas of a higher quality than that required for fuel purposes and permitted its customers to use it for fuel purposes and charged them a less price for it than the price fixed by the ordinance for fuel gas, does not bind the company to continue such permission at such reduced price.

5. CORPORATIONS—*Province of the Legislature to Fix Charges for Services.*—It is the province of a legislative body to fix the rates to be charged for services rendered by a *quasi*-public corporation, where its business is impressed with a public interest.

6. SAME—*Services to be at Reasonable Rates.*—Where persons or corporations carry on a business which is public in its nature and upon which is impressed a public interest, they must serve all who apply on the same terms and at reasonable rates.

7. SAME—*Power of the Courts Over Charges.*—It is in the province of the courts, when the question is properly presented, to determine whether or not the rates which have been established by statute or municipal ordinance are reasonable, but they have no power to fix such rates.

8. SAME—*Power of Municipalities to Fix Rates—Courts to Determine their Reasonableness.*—The board of trustees of the village of Hyde Park, having, as a legislative body, fixed the rate which the People's Gas Light and Coke Company is entitled to charge for gas which it has or may supply to its customers, in the absence of an allegation in the bill justifying it, and there being no evidence in the record from which it can be said that the rate is unreasonable, unjust or excessive, the Circuit Court of Cook County is without jurisdiction, under the pleadings in this case, to determine the rate which said company shall charge its customers for gas in the future.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding.   Heard in this court at the October term, 1900.   Order for injunction reversed. Opinion filed April 8, 1901.

**Statement by the Court.**—Appellees and six others, residents of that part of Chicago formerly known as the village of Hyde Park, filed their bill in the Circuit Court, as well on their account as of all other consumers of gas in

Hyde Park similarly situated, against appellant, a corporation, for the purpose of enjoining appellant from raising the price of artificial or manufactured gas supplied by it for fuel purposes from the net rate of seventy-two cents to one dollar per thousand cubic feet to complainants and other consumers of gas in Hyde Park, from collecting or attempting to collect more than the said net rate for all gas used by complainants for fuel purposes within the period during each month in which said net rate had theretofore obtained, from thereafter charging complainants more than that amount for said gas, and from in any manner interfering with or preventing the receipt and use by complainants of said gas from the pipes and mains of appellant. The bill asks that on a final hearing the injunction be made perpetual.

An application for injunction was heard by the chancellor upon the bill as amended, the answer of appellant thereto, and affidavits in support of the bill and said answer, which resulted in a temporary order of the court directing that appellant, its agents, etc., absolutely " desist and refrain from collecting or attempting to collect more than the gross rate of ninety cents per thousand cubic feet for all illuminating gas such as is now being delivered by said defendant and used by complainants for fuel or heating purposes, at the respective premises as set forth in said bill, with a discount therefrom of twenty per cent when paid, or offered to be paid by said complainants to said defendant within the period during each month in which the said discount heretofore obtained, and from thereafter charging said complainants more than the said gross rate of ninety cents per thousand cubic feet for all such gas used by them for fuel or heating purposes, and that the said defendant, The People's Gas Light and Coke Company, its officers, agents, attorneys and servants absolutely desist and refrain from in any manner interfering with or preventing the use, by the complainants, of said gas, or from hampering or obstructing them therein so long as the said complainants shall pay or offer to pay, from time to time, as above set forth, to the said defendant, for said gas the same price as hereinbefore set forth."

From said temporary order of injunction the appeal herein has been taken. After the appeal was perfected, which was on January 8, 1901, and on, to wit, January 23, 1901, the chancellor, on motion of the complainants, modified the said injunction order by striking out the word "illuminating" and substituting in the place thereof the word "manufactured."

It appears from the bill, answer and affidavits, in substance, that the appellant, The People's Gas Light and Coke Company, was incorporated by act of the General Assembly February 12, 1855, and given power to erect gas works in Chicago, to manufacture and sell gas therein, and, with the consent of the city council, to lay gas pipes in any of the streets or avenues of the city and to furnish gas to the inhabitants of the city at a rate not exceeding $2.50 per thousand feet.

Said act of 1855 was amended by the General Assembly by an act approved February 7, 1865, by which appellant was allowed to manufacture, supply and sell gas to be made from any and all substances or a combination thereof, from which inflammable gas is usually obtained, to be used for the purpose of lighting the city and any streets, buildings or houses therein contained, and with the consent of the common council to lay down and use all necessary pipes for the conducting of gas in and along any of the streets, alley or avenues of said city; also providing that ten years after the passage of this amendatory act the common council might, by resolution or ordinance, regulate the prices charged by appellant for gas, but said council should in no case be authorized to compel the company to furnish gas at a rate less than $3 per thousand feet.

March 21, 1889, the board of trustees of the then village of Hyde Park passed an ordinance, by section 1 of which was granted to Hank & McClary, and to their assigns, the right to construct, maintain and operate a system of gas works, to enable them to receive, produce and furnish for sale natural and other gas and petroleum oil, or either of them, and to deliver such gas and oil to their customers

along, upon and under all avenues, streets, alleys, etc., in said village, through pipes, tubes, etc., to be laid and operated by them. By section 8 of this ordinance it is provided that Hank & McClary, or their assigns, should commence the erection of gas works within six months from the date of the passage of the ordinance, and should "complete said works and furnish gas for fuel, power, light or heat, within eighteen months from said date;" also that "if said Hank & McClary, or their assigns, shall fail to so commence said works and complete the same, and furnish gas within said periods of six (6) and eighteen (18) months, or having commenced to supply gas, they shall, unless for causes beyond the control of said Hank & McClary, or their assigns, cease to supply gas for fuel, power, light or heat for a period of more than thirty (30) days, then the rights and privileges hereby granted shall cease and be of no more force and effect."

Section 9 of this ordinance is in part as follows:

"The pipes for oil and for high pressure natural gas, that is, having a pressure exceeding ten (10) pounds to the square inch, shall be of wrought iron of the best material and with joints of the best known character for securing natural gas or oil."

Section 11 is as follows:

"Said Hank & McClary, or their assigns, shall not charge nor collect more than one dollar and twenty-five cents ($1.25) per thousand cubic feet for gas for illuminating purposes, not more than ninety cents ($.90) per thousand cubic feet for gas for heating purposes, with a rebate of twenty per cent (20 per cent) on said above prices in case of payment on or before the twelfth (12th) day of the month next succeeding that in which such gas is used by consumers thereof. When said Hank & McClary, or their assigns, shall furnish illuminating gas, then said Hank & McClary, or their assigns, shall supply gas light under uniform and sufficient pressure between sunset and sunrise of each day, and the quality of the same shall be as nearly uniform as practicable, averaging for any one month not less than sixteen (16) sperm candles, burning one hundred and twenty (120) grains per hour; to be determined by authorized photometrical tests, a five (5) foot burner being

used; and provided, the rights and privileges hereby granted are upon the express condition that said Hank & McClary, or their assigns, shall not charge the village of Hyde Park more than ninety cents ($.90) per thousand cubic feet for illuminating gas, and not more than sixty five cents ($.65) per thousand cubic feet for heating gas."

Hank & McClary assigned their rights under said ordinance to the Mutual Fuel Gas Co., a corporation, which company, within the time and under the provisions of this ordinance, erected gas works in Hyde Park and laid pipes and mains in the streets and avenues thereof, and for a time (just how long does not appear) engaged in the business of selling and distributing gas manufactured for heating and power purposes, which it sold to consumers at the net rate of fifty cents per thousand cubic feet, but this business became unprofitable and the Mutual Company abandoned it, and in lieu thereof engaged in the business of manufacturing and selling illuminating gas and used its pipes which had theretofore been used for the distribution of the gas manufactured for heating and power purposes, for the delivery and distribution of said illuminating gas, which latter gas it sold at the net rate of $1 per thousand cubic feet when used for illuminating, but also permitted such of its consumers as desired to use said illuminating gas for fuel purposes, and when it was so used the company charged therefor the net rate of seventy-two cents per thousand cubic feet. After the Mutual Company began the manufacture and selling of gas for illuminating purposes it ceased the manufacture of a gas especially designed for heating, power or fuel purposes, or either of them, and did not at any time engage in the business of supplying, selling or distributing natural gas or petroleum oil. Said Mutual Company continued its said business of the manufacture and sale of gas for illuminating at the price of $1 per thousand cubic feet, and at the same time permitted the same gas to be used for fuel purposes, charging therefor the net rate of seventy-two cents per thousand feet as long as it remained in business and up to the date of the consolidation of that

company with the appellant company in the year 1897, as herein below stated.

Prior to the year 1897 and before the village of Hyde Park was annexed to Chicago, the trustees of that village had granted rights and franchises to the Hyde Park Gas Co., the Hyde Park Light and Fuel Co. and the Metropolitan Gas Co., by which said companies were permitted to lay gas mains and pipes in the streets and to make, furnish and sell artificial or manufactured gas and other gas to the people of said village for the purposes of lighting and heating and for fuel, but the actual business of supplying gas for illuminating and fuel purposes in the village for a few years next before 1897 and 1898, as well as in those years, was done by the said Hyde Park Gas Co. and said Mutual Company, the former company selling its gas at the same rates as hereinabove stated gas was sold by said Mutual Company.

Pursuant to an act of the General Assembly of this State passed and in force July 1, 1897, and in the year 1898, said Hyde Park and Mutual Companies became merged and consolidated into the appellant company, and thereafter the latter company operated the gas works of said other two companies and used, and have ever since used their pipes and mains, as well as others laid by appellant, for the purpose of furnishing and distributing gas throughout what was originally the village of Hyde Park before its annexation to the city of Chicago. Up to December 5, 1900, and from the time of said consolidation, the appellant company furnished substantially the same grade and quality of gas, and part of the time a higher grade and quality of gas, to its customers and to the former customers of the Mutual Company that had before such consolidation been furnished and supplied by the Mutual Company, and at the same prices as hereinabove stated, the business having attained at the time of the filing of the bill herein very large proportions, and appellant had at that time a practical monopoly of the business of selling and distributing artificial gas for illuminating and fuel purposes in Hyde Park, by means of which

appellees and other consumers of gas in Hyde Park were compelled to purchase all the gas they might need or use from the appellant company.

December 5, 1900, one Allen, a resident of the city of Chicago outside of that part formerly known as Hyde Park, filed a bill against appellant company, seeking to compel it to furnish him manufactured gas for fuel or illuminating purposes at the rate of seventy-two cents per thousand feet, for the reason that the company was then furnishing manufactured fuel gas in the Hyde Park district of said city at that price.

On the same date the appellant company sent a circular to its patrons in Hyde Park, including appellees, in which is stated, among other things, that it was furnishing manufactured gas in the Hyde Park district for fuel purposes at the net rate of seventy-two cents per thousand feet; that the Hyde Park Company at the time of its consolidation in 1897 with the appellant " was furnishing illuminating gas to its consumers at the net rate of $1 per thousand cubic feet, and manufactured fuel gas to its customers at the net rate of seventy-two cents per thousand cubic feet;" that in Chicago the appellant " was at that time furnishing gas at the net rate of $1 per thousand cubic feet, whether used as illuminating or fuel gas," and that by the terms of the consolidation act appellant was not prohibited from making the price charged for fuel gas in Hyde Park the same as appellant charged elsewhere in Chicago; also that appellant did not at the time of the consolidation, and " has not since such consolidation to the date hereof made any change in the price charged for fuel gas to its customers and patrons in the Hyde Park district, but left the rate in that district as it found it on the date of the consolidation;" but that by reason of said Allen suit it would be compelled to sell fuel gas all over Chicago at a uniform rate, and proposed to its patrons thereafter to charge for manufactured fuel gas in the Hyde Park district the net price of $1 per thousand cubic feet pending the determination of the Allen case, though it would set aside the difference between seventy-

two cents and $1 per thousand cubic feet paid for such gas by its patrons as a trust fund, and if the company should be successful in its defense of the Allen suit, then, at the end of the litigation, it would return to its patrons said difference. The circular further states in substance that the company was planning to extend its natural gas facilities throughout Hyde Park, and hoped to be able before the termination of the Allen suit to furnish all of its patrons in that district with natural gas for fuel purposes at a net rate not to exceed fifty cents per thousand cubic feet.

Appellees were patrons of the Mutual Company before said consolidation, and occupied buildings and parts of buildings in Hyde Park for dwellings in which they resided and had been furnished gas by the Mutual Company through its mains and pipes laid under said ordinance to Hank & McClary, for cooking and heating their dwellings by gas grates and for lighting, and after such consolidation and up to the filing of the bill had been furnished gas for the same purposes by the appellant company and paid therefor both to the Mutual Company and the appellant company, for such gas when used for lighting or illuminating, the net price of $1 per thousand cubic feet, and for the same gas when used for cooking or in heating by grates, the net price of seventy-two cents per thousand cubic feet, the gas being supplied through the same mains and pipes, but through different meters, according to the purpose for which it was used.

December 12, 1900, appellees filed their bill, setting up their relations to the appellant company and its predecessors, their situation and the ordinances, circular and legislation, all in detail, but as above in substance set forth, and alleging and charging that the appellant would shut off their supply of gas and endeavor to force them to pay a charge of $1 per thousand feet unless enjoined, and that such action by appellant would work irreparable injury to appellees.

December 24, 1900, appellant filed its answer, which, besides stating many of the matters hereinabove stated,

alleges that in the gas business there is a recognized, well established and well defined difference between illuminating gas and heating gas, and a well recognized difference between the use of gas for heating purposes and the use of gas for fuel purposes; that sometimes illuminating gas is used for fuel purposes, but never for heating purposes; setting out in detail the reasons therefor; also that natural gas is not an illuminating gas, but is suitable for heating and fuel purposes, setting out in detail the reasons therefor and its special value as a heating or fuel gas. These allegations of the answer, which is sworn to, have strong support in the affidavits in behalf of appellant used on the hearing, and none of this evidence is seriously controverted.

The answer further alleges that immediately after the consolidation the appellant improved the character and quality of the gas that had been furnished by the Mutual Company, and proceeded to introduce natural gas for heating and fuel purposes throughout the territory in Hyde Park in which the mains of the Mutual Company had been laid, and that it was then in a position and offered to sell and deliver to the complainants and each of them its natural gas for heating or fuel purposes, or for any other purposes for which the complainants might desire to use the same, at a net rate not to exceed fifty cents per thousand cubic feet. These allegations of the answer are also strongly supported by affidavits, and are not controverted by the appellees, though they declined to use the natural gas so tendered to them by the appellant.

The answer admits that on the filing of the Allen bill appellant fixed the net rate of its illuminating gas to the citizens of Hyde Park, regardless of the purpose for which the same might be used, at $1 per thousand feet, and that it had promised, if successful in defending the Allen suit, it would forthwith reduce the price of its illuminating gas for fuel purposes to seventy-two cents per thousand feet to such of its patrons in Hyde Park as it might not be able to furnish with natural gas, and would at the same time return

to such customers the difference between the $1 net per thousand cubic feet paid by them during which the rate for said illuminating gas used by them for fuel purposes remains at $1 net per thousand, as the same now is, and seventy-two cents per thousand cubic feet, but that this would be done, not because of any legal duty on its part, but from a desire to keep the good will of its patrons.

There is no evidence in the record, aside from that recited above, which bears on the reasonableness of the price charged by appellant for illuminating gas, nor is there any allegation in the bill that the price of $1 for illuminating gas or any artificial or manufactured gas when used for fuel or heating purposes, is unreasonable, excessive or unjust. The claim of the bill is that such price is in violation of said ordinance and the statute in relation to consolidation of gas companies.

Winston & Meagher, attorneys for appellant; John P. Wilson, of counsel.

Darrow & Thompson, attorneys for appellees.

Mr. Justice Windes delivered the opinion of the court.

For appellant it is claimed that the Mutual Fuel Gas Co. was under no legal obligation to furnish manufactured or illuminating gas for fuel purposes at seventy-two cents net per thousand cubic feet, but for appellees it is contended that, under the ordinance to Hank & McClary, the material features of which have been set out in the statement preceding this opinion, to whose rights the appellant company succeeds, it is limited to a charge of seventy-two cents per thousand cubic feet for gas used for fuel purposes, irrespective of the grade or quality of the gas. They also contend that equity has the right to enjoin the charge of $1 per thousand cubic feet for gas for fuel purposes, which is proposed to be charged by the appellant company, for the reason that such price is extortionate, excessive and unjust, and appellant, in its business of performing a public service for the citizens of Chicago, is bound to render such service

at a reasonable price. We will consider these questions in the order noted.

Whether or not the appellant is under a legal obligation to furnish gas for fuel purposes at seventy-two cents per thousand cubic feet, independent of the second contention of appellees, must be determined from the construction of the ordinance to Hank & McClary, above referred to, and from the ordinance alone, if by its terms it is plain and unambiguous. It seems to be conceded by counsel on both sides, and it is the law, if it were not conceded, that said ordinance is a contract in the first instance between Hank & McClary and their assigns of the one part, and the board of trustees of the village of Hyde Park, acting in a representative capacity for the citizens thereof, including the appellees, of the other part. It determines their rights with regard to its subject-matter, until changed by the proper authority. Hank & McClary assigned all their rights and interests under the ordinance to the Mutual Fuel Gas Co., and that company, as we have seen from the statement, performed all its duties and obligations as the assign and successor of Hank & McClary incumbent upon it. It first furnished to the people of Hyde Park gas for heating and power purposes, but abandoned that business and thereafter engaged in the business of furnishing an illuminating gas up to the time of the consolidation of that company and its merger into the appellant company. By virtue of such consolidation, and by the statute under which it was made, the appellant company became and is vested with all the rights, privileges and franchises of the Mutual Company under said ordinance, and is also bound by all the duties and obligations of the Mutual Company under the ordinance. This is conceded by counsel for appellant.

Section 1 of the ordinance grants to Hank & McClary and their assigns, the right to construct, maintain and operate a system of works to enable them to receive, produce and furnish for sale natural and other gas and petroleum oil or either of them. By section 8 they are obligated to

commence their works within six months from the date the
ordinance was passed, and complete the same and furnish
"gas for fuel, power, light or heat within eighteen months
from said date," and in case they should fail in either of
those respects, or, having commenced to supply gas, they
should "cease to supply gas for fuel, power, light or heat
for a period of more than thirty days," then their rights
and privileges granted should cease. Section 9 provides
for the character of pipes to be laid for oil and for high
pressure natural gas.

From these provisions it seems plain, beyond any contro-
versy, that the Mutual Company, as the assign of Hank &
McClary, had the right to furnish any kind of manufactured
gas or natural gas, either for fuel, power, light or heat, or
either of said gases, for any, either or all of said purposes.
The appellant company, as its successor, has the same rights,
under the ordinance; that is, it may furnish and sell any
kind of manufactured gas for light, heat or fuel, and may
furnish and sell natural gas for the same purposes or for
either or any number of such purposes.

Section 11 of the ordinance, which has been quoted in
full in the statement, as we construe it, did not permit the
Mutual Company to charge for its gas furnished for illu-
minating purposes more than $1 net per thousand feet,
and if it furnished a gas for heating purposes (which we
think includes fuel purposes), if inferior to the gas which it
furnishes for illuminating purposes, it should not charge more
than seventy-two cents net per thousand cubic feet; but as
the company did not furnish an inferior gas it was not obliged
to furnish an illuminating gas that complied with the test
of the ordinance for that kind of gas, to be used as a fuel
or heating gas, at the net price of seventy-two cents per
thousand cubic feet. We think this becomes apparent when
the different sections of the ordinance are considered, viz.,
the closing part of the 11th section, which provides for the
prices to be charged the village, one price " for illuminating
gas" and another price " for heating gas," and the further
provision of the same section which requires that when

" illuminating gas " should be furnished the supply should be of " gas-light under uniform and sufficient pressure between sunset and sunrise of each day, and the quality of the same shall be as nearly uniform as practicable; averaging for any one month not less than sixteen sperm candles, burning 120 grains per hour; to be determined by authorized photometrical tests, a five-foot burner being used." It is a significant fact that nowhere in the ordinance is a reference made to the kind or quality of the gas to be furnished, except when the gas is to be used for illuminating. This, we think, makes a clearly marked and defined distinction between gas which was required to be furnished under the ordinance for lighting and illuminating purposes, and any other gas contemplated to be furnished for any other purposes, whether for heat, fuel or power; and furthermore makes it clear that the appellant, for a gas which would stand the test provided by the ordinance for an illuminating gas, was entitled to charge therefor a net price of $1 per thousand cubic feet, and for any other gas of an inferior quality, not coming up to the test required by the ordinance, appellant could charge not to exceed seventy-two cents per thousand cubic feet. It seems clear and beyond question, that it could never have been contemplated by this ordinance that the appellant should be required to furnish a high grade or quality of gas, such as would stand the test for illuminating gas, and when the same was used for fuel or heating purposes it could not charge therefor to exceed seventy-two cents net per thousand cubic feet.

Great stress is laid by counsel for appellees upon the fact that the Mutual Company during all the time it supplied gas up to its consolidation with appellant, and the appellant thereafter up to the time of the commencement of the Allen suit, only charged seventy-two cents for the same gas when used for fuel or heating purposes, for which was charged when used for lighting or illuminating purposes $1; also upon the further fact that when the Allen suit was commenced and appellant sent out the circular with regard to gas and prices to its patrons, it did not therein make a

distinction as to the price it proposed to charge, because of the quality of the gas furnished. These facts might be of controlling importance in construing the ordinance, if there was any uncertainty or ambiguity about its terms, but as we have seen, there is none. We are not at liberty to go beyond this ordinance itself in construing it, and consider the acts of the parties thereunder as throwing light upon its construction. When the words of an ordinance or a contract— and this ordinance is a contract—are plain and explicit, there is no need to, and a court will not, go beyond its wording in construing it. Ballance v. City of Peoria, 180 Ill. 29–38; Butterfield v. Sawyer, 187 Ill. 598, 602; Ottawa, etc., Co. v. Downey, 127 Ill. 201–4; R. R. Co. v. Dumser, 109 Ill. 402–10; People v. Rose, 174 Ill. 310–16; R. R. Co. v. City of Chicago, 173 Ill. 471–82; State Board, etc., v. Ross, 91 Ill. App. 281–6; Sutherland on Stat. Construction, Secs. 235, 237–8.

The fact that the Mutual Company, and after it the appellant, furnished a high grade gas and permitted consumers to use it for fuel purposes, and charged only seventy-two cents for it when so used, did not bind appellant to continue such permission at that price. Had the permission been to use the gas free of charge, it would not be contended that this gave the consumer the right to have free gas longer than appellant was willing to extend such a gratuity. The principle is, however, the same, as we construe this ordinance.

It is argued by appellees that under the statute authorizing the consolidation, appellant could not increase the price of gas that was furnished by the Mutual Company to its consumers above what it was during any part of the year immediately preceding such consolidation, but we think the contention is not sound. The section referred to is as follows:

"Sec. 11. Any corporation purchasing, etc., or into which any company or companies are consolidated and merged under this act, shall be at the time of availing itself of or accepting the benefits of this act in the actual business of furnishing gas to consumers, and shall be subject to the following provisions: Such corporation shall not in-

crease the price charged by it for gas of the quality furnished to consumers during any part of the year immediately preceding such purchase or lease or such consolidation and merger. Such corporation shall furnish gas to consumers as good in quality as it furnished previous to such purchase or lease, or such consolidation and merger."

A reference to this section and the first section of the act makes it plain that the price which should not be increased after the consolidation, is the price which was charged by the company into which other companies are consolidated and merged under the act. The company to which other companies may sell or transfer their rights, franchises and privileges must, under the first section of the act, be a " gas company doing business in the same city, town or village," and that company, under the section quoted, must have been, at the time of the sale or consolidation, " in the actual business of furnishing gas to consumers." From this it is evident that the language in section 11, viz., " Such corporation shall not increase the price charged by it for gas," etc., refers to the company in which the other companies were consolidated, or to the purchasing corporation, and to the price charged by it for gas in the same city for any part of the year immediately preceding the consolidation.

Much argument has been indulged in by counsel on both sides as to a distinction which, it is claimed, should be made between " manufactured " gas and " illuminating " gas, and as to the power of the court after the appeal was perfected to change the injunction order by striking out the " illuminating " in the order as originally entered, and inserting in lieu thereof the word " manufactured." Under our construction of the ordinance, we regard the distinction between these words as of no importance in this case, but if it were important, under the previous decisions of this court, we could only consider the order of injunction as it was when the appeal was perfected. Cook Co. Brick Co. v. Bach, 93 Ill. App. 88; Blackall v. Sexton, 72 Ill. App. 395.

The second claim of appellees, that equity has the right to enjoin the appellant from charging $1 per thousand

cubic feet because it is excessive and unjust, is not, in our opinion, tenable. The cases cited by appellees' counsel do not sustain their claim. They concede practically that it is the province of the legislative body to fix the rate which shall be charged for services rendered by a *quasi*-public corporation such as appellant, when its business is impressed with a public interest, but they say that because it has been held by the courts that they have the right to determine, after a rate has been fixed, whether it is reasonable or unreasonable, it follows that the courts have the right to say that a proposed rate is unreasonably high and that another and lower rate is sufficiently high. The adjudicated cases do not sustain the contention, and we do not feel justified, under any general principle of the law to which our attention has been directed, in going beyond the line fixed by the decided cases.

It has been held by a number of the cases cited by appellees, that where persons or corporations carry on a business which is public in its nature, and upon which is impressed a public interest, they must serve all who apply on the same terms and at reasonable rates. City of Danville v. Danville Water Co., 178 Ill. 299, 309; same case, 180 Ill. 235–41.

The courts have also held that, in the absence of statutory regulations upon such matters, they must decide what is reasonable. Regulations by ordinance are the same as statutory regulations. Munn v. Illinois, 94 U. S. 113–34; Rogers Park Water Co. v. Fergus, 178 Ill. 571; Dow v. Biedelman, 125 U. S. 680; Interstate Com. Com'n v. Ry. Co., 167 U. S. 479–99, and cases cited; Capital, etc., Co. v. City of Des Moines, 72 Fed. Rep. 818.

But it has been further held that " the power to regulate and control the charges of railroad companies or other agencies engaged in public employments is legislative and not judicial," and that the charges for services of employments which are public in their character, must be regulated by the legislative bodies, subject only to such restraints as are imposed by charter contracts and by the authority of Congress to regulate foreign and interstate commerce.

R. R. Co. v. Jones, 149 Ill. 361–7; see also, the Danville Water Co. case, *supra;* Interstate Com. Com'n case, *supra,* pp. 499 and 505; Express cases, 117 U. S. 1–29; Capital, etc., Gas Co. v. City of Des Moines, 72 Fed. R. 818, and cases therein cited; Nebraska Tel. Co. v. State, 55 Neb. 627.

In the Interstate Commerce case the court say:

"It is one thing to inquire whether the rates which have been charged and collected are reasonable—that is a judicial act—but an entirely different thing to prescribe rates which shall be charged in the future—that is a legislative act."

In the Gas Co. case, 72 Fed. Rep., it was held that it is the province of the court, when the question is properly presented, to determine whether or not rates which have been established by statute or municipal ordinance are reasonable, but that the court has no power to fix rates; that "it may not declare what rates would be reasonable and by its decree establish those rates as the rates to be charged. Its power is exhausted on this point when it has duly passed on the reasonableness of the rates as fixed in the ordinance."

In Nebraska Tel. Co. case, *supra,* the court say, "The power—the jurisdiction—to determine what compensation a public service corporation may exact for services to be rendered by it, we understand to be a legislative, and not a judicial, function. * * * Fixing a compensation which public service corporations may charge for services to be rendered by them is legislating; it is law making. The power of the courts is limited to declaring what the law is, and they are precluded by the constitution from performing legislative functions;" and held that though it was within the power of the courts to declare laws fixing the compensation to public service corporations void because the compensation fixed was unreasonable, they did not have authority to determine what compensation would be reasonable for service to be rendered in the future.

While the Circuit Court might, in a proper case and under proper pleadings, have determined whether or not the charge

of $1 under this ordinance for illuminating gas when used for fuel or heating purposes is excessive and unjust, there is no allegation in this bill that such a charge is excessive or unjust, but the whole theory of the bill and its allegations is to the effect that such charge is in violation of the ordinance and the consolidation statute.

We therefore hold in this case that the board of trustees of Hyde Park, a legislative body, having fixed the rate which appellant is entitled to charge for gas which it has supplied or may supply to its customers, and there being no allegations justifying it and no evidence in the record from which it could be said that the rate is unreasonable, unjust or excessive, the Circuit Court had no right to determine that question against appellant. Especially was it without power or jurisdiction to determine the rate at which the appellant should charge its customers for gas in the future, as is done by this injunction order.

The fact that the Mutual Company and appellant furnished to consumers the high grade gas at seventy-two cents for fuel purposes, does not establish that $1 for that gas is excessive or unjust, it appearing at the same time that they also received $1 for the same gas when used for illuminating and that the prevailing price in Chicago charged for illuminating gas when used for fuel is $1.

In the view we take of the case it seems unnecessary to consider appellant's tender to appellees of natural gas for heating and fuel purposes, and whether or not appellees have shown that they will suffer irreparable injury if appellant is not restrained from charging them $1 per thousand feet for high grade illuminating gas.

The order of injunction of the Circuit Court is reversed.