# ST. PAUL BOOK & STATIONERY COMPANY v. ST. PAUL GASLIGHT COMPANY.[1]

June 18, 1915.

Nos. 18,973, 19,243—(41, 126).

**Public service corporations — rates — injunction.**

1. While in a proper action the reasonableness of an established rate may be the subject of judicial investigation and adjudication, courts are without authority to fix by injunction, or otherwise, rates for public service corporations.

**Discrimination — pleading.**

2. The complaint does not charge defendant with unlawful discrimination. Facts going to show discrimination must be alleged. General statements of discrimination are insufficient.

**Action to enjoin proposed schedule of rates.**

3. For practical reasons courts ought not to entertain suits at the instance of individual consumers to enjoin a public service corporation from placing in effect a schedule of rates which does not exceed the maximum fixed by the proper legislative body.

**Electricity — maximum charge in St. Paul.**

4. The city council of the city of St. Paul is vested with authority to fix a maximum price which may be charged, by defendant, a public service corporation, having the exclusive franchise to supply electric current within the city.

**Same — remedy of individual consumer.**

5. The remedy of consumers for discrimination in rates by a public serv-

[1] Reported in 153 N. W. 262.

---

Note.—As to the power of judiciary to fix rates to be charged by public service corporations, see note in 18 L.R.A.(N.S.) 529.

As to power of municipality apart from contract to regulate the rates to be charged by public service corporations, see notes in 33 L.R.A.(N.S.) 759, and 43 L.R.A.(N.S.) 994.

As to the right to question reasonableness of statutory rate for gas, see note in 15 L.R.A.(N.S.) 763.

As to the right of a water or light company to discriminate between consumers as to rate, see note in 27 L.R.A.(N.S.) 427.

ice corporation is ordinarily an action at law for damages, and not by injunction. The complaint of the interveners fails to state a cause of action for relief by injunction.

Action in the district court for Ramsey county. A number of corporations and individuals filed a complaint in intervention. The facts are stated in the opinion. Defendant's demurrer to the complaint was overruled by Orr, J., who certified the question presented to be important and doubtful, in his opinion.

From an order overruling its demurrer to the complaint, defendant appealed. Reversed.

From the order sustaining defendant's demurrer to the complaint in intervention, interveners appealed. Affirmed.

*Halbert & Halbert, John W. Bennett* and *George G. Chapin,* for plaintiffs and interveners.

*Butler & Mitchell,* for defendant.

HOLT, J.

This is an action in equity, brought by plaintiff in its own behalf and in behalf of the denizens of the city of St. Paul, Minnesota, similarly circumstanced, to enjoin the defendant, a public service corporation, from enforcing an alleged unreasonable and exorbitant schedule of rates adopted by it, which schedule, however, is not claimed to violate the provisions of an ordinance of the city fixing a maximum price for the distribution and sale of electric current by defendant to patrons within the city. The court is also asked to direct defendant to fix just and nondiscriminatory rates, and to compel it to account for its previous dealings with plaintiff, and therein disclose the true value of all its property and business. A demurrer to the complaint was overruled, and the question involved certified as doubtful. Thereafter a large number of parties joined in a complaint in intervention. To this pleading a demurrer was sustained. The correctness of each order is presented by the appeals.

These matters of important bearing appear from the complaint: The plaintiff corporation has for some years past conducted a business in the city of St. Paul wherein it has used electricity for light-

ing and power purposes, and its business is dependent upon obtaining a supply of electric current. For about two years prior to May 1, 1913, defendant had voluntarily supplied plaintiff with electric current for lighting purposes at a certain rate, which is alleged to be adequate and not unreasonable, unless unreasonably high. And that, during the same time, electric current for power purposes was furnished, upon a different basis of computation, under an agreement between plaintiff and defendant as to price, which price is stated to be remunerative to defendant and not unreasonable, unless unreasonably high. Defendant is a public service corporation holding an exclusive franchise from the city under which it, upon compensation paid, supplies to the city, and to persons and business enterprises within its borders electric current for light and power purposes. The common council of the city of St. Paul by Ordinance No. 3119, approved April 7, 1913, and taking effect May 1, 1913, fixed the maximum price which defendant might charge its customers for electric current. This maximum price is in some degree governed by the quantity consumed during a given time. It is alleged that defendant, using said ordinance as an excuse immediately upon its going into effect, on May 1, 1913, raised the rates theretofore charged plaintiff and other patrons, nearly 70 per cent, and since that time has continued to send plaintiff inadequate and incorrect statements, calling for payment of unreasonable and exorbitant prices for the electricity furnished. There are no averments that the price or rate now fixed and demanded exceeds in any respect the maximum established by the ordinance, or is as high as thereby permitted, or that plaintiff has paid the alleged excessive amounts asked by the statements or bills. Discrimination is charged in general terms.

The attempt by this suit to fix or establish reasonable and just rates for the future must fail. Prescribing or regulating rates for public service corporations falls within the domain of legislation, and courts should not intrude. Interstate Commerce Com. v. Ry. Co. 167 U. S. 479, 17 Sup. Ct. 896, 42 L. ed. 243; Nebraska Tel. Co. v. State, 55 Neb. 627, 76 N. W. 171, 45 L.R.A. 113; City of

Madison v. Madison Gas & Electric Co. 129 Wis. 249, 108 N. W. 65, 8 L.R.A.(N.S.) 529, 116 Am. St. 944, 9 Ann. Cas. 819.

We are also clear that no cause of action for wrongful discrimination is stated in the complaint. No allegation is found that less rates were exacted from any other patron than were demanded from plaintiff for like service. Facts showing discrimination must be pleaded. It is not sufficient to make a general allegation to that effect. We take it, that no contention of discrimination is based upon the graduation of the maximum rate in the ordinance itself—it permitting a lower maximum where a larger quantity is supplied in a given time than where the quantity is less during the same time. All discrimination is not unlawful. Valid reasons may exist for different rates for current furnished for lighting purposes from that for power purposes, and for making some distinction based upon the quantity supplied during a given time.

The important and decisive question presented by the demurrer to the complaint is, whether, at the suit of a consumer of a commodity supplied by a public service corporation, the court can inquire into the reasonableness of rates fixed by the proper legislative body, and enjoin such rates if found exorbitant. It is well settled now that a public service corporation may seek and obtain the aid of the court enjoining the enforcement of unreasonably low rates, no matter by what authority established. Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702, 33 L. ed. 970. And, at first blush, a just and necessary corollary of that rule would seem to demand that the same right be accorded the consumer to have a judicial determination whether a rate, established by legislative authority, is so unreasonably high that its enforcement should be enjoined. Justice Miller, in his concurring statement in the last case cited, seems to be of that opinion. Of course, by technical refinement a legal distinction in the position occupied by a public service corporation and its patrons may be made. The former is compelled to furnish the commodity or service, whereas the latter may accept or reject the same at pleasure. Hence only the public service corporation, and not its possible patrons, can, under a strict construction, be held to be deprived of property without due process of law through

unreasonable rates.    This is the reasoning of the supreme court in Brooklyn Union Gas Co. v. City of New York, 50 Misc. Rep. 450, 100 N. Y. Supp. 570.    While it is not specifically referred to in the opinion by Judge Gaynor, on appeal in the same case, speaking for the court in the appellate division (115 App. Div. 69, 100 N. Y. Supp. 625) nor by the Court of Appeals, when the case came there in 188 N. Y. 334, 81 N. E. 141, 15 L.R.A.(N.S.) 763, 117 Am. St. 868, the result reached was that the city could not raise the question of the unreasonableness of the rate demanded, since it did not exceed the maximum permitted by statute.    See also Pinny & Boyle Co. v. Los Angeles Gas & Electric Co. 168 Cal. 12, 141 Pac. 620.    We are not strongly impressed with the proposition that, at the present time, the inhabitants of our large cities can dispense with the utilities supplied by the public service corporations, if the price seems too high.    They are dependent upon these corporations for matters of daily need and comfort, such as light, water, power and the like.    If these necessities may be obtained only upon the payment of exorbitant prices, it really results in an enforced taking from the consumer of whatever he pays in excess of a reasonable compensation.    But there is a practical side to the question which should weigh heavily against the courts entertaining actions, at the instance of the individual consumer, to destroy rates, or render of no effect a maximum price fixed by competent legislative authority for the control of public service corporations.    Rate regulation is justly deemed of great importance in securing to the public cheap, efficient, and impartial service from these corporations; and is undertaken by the government or its agencies.    Whether done by the nation, state or municipality, it is by representatives elected by the people and accountable to them.    Such being the case, there is little danger of excessive rates being fixed.    But if, perchance, it should happen, the remedy of the public is by appeal to the rate-fixing body, or, if necessary, by a change in its membership.    If, instead of thus righting the wrong, every consumer is free to seek the injunctional remedy from the courts, no rate schedule would have stability.    We know what divergent views consumers have regarding the reasonableness of rates charged by a public service corporation.    Every

case brought by the individual consumer to test a rate would have to be decided upon the evidence adduced therein. Different cases, involving the same rate, may have to be determined upon testimony materially unlike, and different judgments result. Neither judges nor juries draw the same conclusion from the same testimony, let alone divergent. Once open the door to actions of this character and courts would be kept busy. If a statutory rate can be enjoined by a consumer, it would seem to follow that he may also sue for any amount which he deems he has paid in excess of an alleged reasonable rate. It would be almost certain that no two juries would fix upon the same amount as the reasonable rate. We think the result of permitting such litigation, at the instance of the individual consumer, would be utterly destructive of all legislative regulation of public service corporation rates. Moreover, if under a complaint, like the one before us, which really does not attack the maximum fixed by the ordinance, hence not the ordinance itself, an injunction be granted, there is such a possibility of innumerable suits that thereby the public service corporation would be put to such expense and annoyance that it would react upon the consumer both in respect to service and price. The arguments used by the court in Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co. 204 U. S. 426, 27 Sup. Ct. 350, 51 L. ed. 553, 9 Ann. Cas. 1075; Van Patten v. Chicago, M. & St. P. Ry. Co. 81 Fed. 545, and Griffith v. Water Works Co. 88 Miss. 371, 41 South. 1011, 8 Ann. Cas. 1130, for holding the consumer to the established rates, may be applied to the situation presented by this complaint. So applied they tend to sustain the demurrer.

There can be no doubt of the authority of the city of St. Paul to regulate the rates of public service corporations, the same as might have been done by the legislature prior to the constitutional amendment prohibiting special legislation. The charter provision is of the same force as a statute upon the subject. We do not think Agua Pura Co. v. Los Vegas, 10 N. Mex. 6, 60 Pac. 208, 50 L.R.A. 224, controls here. Section 31 of the city's home rule charter provides: "The common council shall have the power to regulate and control the maximum price charged by any corporation or person exercising any

privilege or franchise in the city for service rendered by it to the city or to any other person or corporation, but such price shall be fair and reasonable." The last clause is contended by plaintiff to be a limitation, or a proviso, under which the reasonableness of the rate may be judicially inquired into. We think the legislature itself is similarly limited. All rate-fixing bodies must proceed upon the implied or expressed direction that they are to ascertain what rate will be fair and reasonable to both producer and consumer, and to establish the one so found and none other. Nor do we agree with defendant that the clause referred to was inserted for the protection of the public service corporations alone, although there is force in the claim that, when the legislature and its agencies undertake to establish rates for such corporations, it is chiefly in the interest and protection of the public.

Plaintiff relies upon Griffin v. Goldsboro Water Co. 122 N. C. 206, 30 S. E. 319, 41 L.R.A. 240, and a dictum in Peoples Gas Light & Coke Co. v. Hale, 94 Ill. App. 406, to sustain the right of individual consumers to seek the aid of courts to prevent the enforcement of unreasonably high rates or excessive maximum charges, no matter by what authority the same were fixed. In the North Carolina case the city was not authorized by law to establish rates. It adopted the rate attacked under the implied power of municipalities to regulate such matters by stipulations in the granted franchise. The court said: "Still less can these rates bind consumers (if unreasonable or discriminating), since the town had authority to grant the franchise but not to stipulate for rates binding upon the citizens. The legislature did not confer that power." The decision, conceding it sound, is not of weight here, where the common council, by the charter, is vested with the same power in the premises that could have been delegated to it by the legislature, prior to the constitutional amendment prohibiting special legislation. The supreme court of Mississippi in Griffith v. Water Works Co. supra, declined to adopt the view of the North Carolina court. The statement in Peoples Gas Light & Coke Co. v. Hale, supra, that equity entertains suits at the instance of the individual consumer to test the reasonableness

of legally established rates, is clearly obiter. The decision was upon other grounds adverse to the plaintiff therein.

Our conclusion is that the reasonableness of the rates for electric current, supplied by defendant, cannot be raised at the instance of the individual user, so long as such rate does not exceed the maximum established by the ordinance referred to.

In respect to the complaint in intervention, we think the demurrer was rightly sustained. The cause therein attempted to be stated, based on excessive rate, is the same as in the complaint, and is insufficient for the reason already stated.

The same is true with respect to the charge of discrimination, unless a different result should follow from this paragraph in interveners' complaint: "That said defendant does now and has since all increase in its charges for electric current to these plaintiffs and others similarly situated sold to various third parties substantially the same quantities of electric current under substantially similar physical conditions respectively at the old rate of five and four-tenths cents per kilowatt hour, both for power and lighting purposes, and other low rates, which rates are substantially less than the rates now charged these plaintiffs and other inhabitants of the city of St. Paul, similarly situated. That since the first day of May, 1913, on which day aforesaid Ordinance Number 3119 of the city of St. Paul became of full force and effect, this defendant has entered into various contracts for long terms of years with various third parties in the city of St. Paul, and has and does now and must under the terms of said contracts continue to furnish electric current to said parties for lighting and power purposes in substantially the same quantities and under substantially similar physical conditions respectively as furnished these plaintiffs and other inhabitants of the city of St. Paul similarly situated at five and four-tenths cents per kilowatt hour, both for power and lighting purposes and at other various rates substantially lower than the rates now charged these plaintiffs and others similarly situated." No averments are made that any one of the interveners has paid the amount charged, or any amount. Many of the interveners have contracts for future delivery of current at the old rates. It is difficult to see what standing they have

to charge discrimination. It is also very doubtful that the allegations of discrimination are sufficient. Portland Ry. Light & Power Co. v. City of Portland, 200 Fed. 890. But however that may be, we do not think courts can by injunction prevent future discriminations.

As before stated, the ordinance itself is not assailed as improperly discriminatory. The charge seems to be that in the conduct of defendant's business all consumers similarly circumstanced are not treated alike. We doubt not that the conditions being the same, the price must also be the same. Favoritism in a public service corporation towards some of its patrons is not tolerated in law. Substantial equality in treatment is one of the chief aims in rate regulation. State v. Board of Water & Light Commrs. of City of Duluth, 105 Minn. 472, 117 N. W. 827, 127 Am. St. 581, holds that a public service company must transact its business "so as not to improperly discriminate between different persons or property, or different classes of persons or property." But, against discrimination of the sort attempted to be alleged in the complaint in intervention, there is ordinarily an adequate remedy at law for damages. Sullivan v. Minneapolis & R. R. Ry. Co. 121 Minn. 488, 142 N. W. 3, 45 L.R.A.(N.S.) 612; Seaman v. Minneapolis & R. R. Ry. Co. 127 Minn. 180, 149 N. W. 134. The allegations of discrimination above set out are so varied and indefinite that no injunction can be based thereon. Furthermore, if a public service corporation resorts to unlawful practices its franchise may, by proper proceeding, be forfeited. The granting of unlawful favors by a public utility corporation to one or more of its patrons "does not give a right of action to every member of the community. That is a grievance to be redressed by the public. On principle it cannot be redressed by an individual unless he is specially aggrieved thereby." Boerth v. Detroit City Gas Co. 152 Mich. 654, 116 N. W. 628, 18 L.R.A.(N.S.) 1197.

It follows that the order overruling the demurrer to the complaint is reversed, and the order sustaining the demurrer to the complaint in intervention is affirmed.