Lesher *v.* Wirth.

JOHN J. LESHER, Plaintiff in Error, *v.* GEORGE WIRTH, Administrator of Adelia Fox, deceased, Defendant in Error.

ERROR TO WABASH.

The widow of a person who dies intestate, is entitled, as her sole and separate property, to certain specified articles of the intestate's estate, or their value.

The children of a widow, who dies intestate, a housekeeper, and the head of a family, shall take the same articles of property that they would take if the intestate was a widower.

THIS was a suit commenced before a justice of the peace in the county of Wabash, by Lesher, to recover the amount of a medical bill, for services rendered the intestate in her last illness. An appeal was taken to the circuit court, and was submitted to that court, upon the following agreed case. That on the 25th day of September, A. D. 1840, Henry Fox, of Wabash county, departed this life intestate, leaving Adelia Fox, his widow, and a number of children his heirs at law; that his estate was settled by due course of administration, and his widow was allowed and took her separate provision under the statute. That the widow by her industry supported herself and family. And afterwards, on the 25th of September, 1848, she departed this life intestate, leaving personalty, to the value of one hundred and fifty or two hundred dollars; that although there were creditors, of whom the plaintiff was one, as attending physician during the last illness, the probate court of Wabash county, where administration was had by the defendant, ordered the whole of the proceeds of the property to be distributed among the children residing with the decedent at the time of her death, under the fourth section of act number thirty-seven in the appendix, page 597 of the Revised Statutes, and that this suit is brought to recover the claim for medical services as aforesaid. Upon this state of case, the circuit

court of Wabash county, HARLAN, Judge, presiding, at [April term, 1850, gave the defendant a judgment for costs, and dismissed the plaintiff's action.

Lesher sued out this writ of error.

C. H. CONSTABLE, for plaintiff in error.

A. KITCHELL, for defendant in error.

CATON, J.  By our law the widow of a person who dies intestate, is entitled, as her sole and separate property, to certain specified articles of the intestate's estate, or the value thereof in money, which she takes exempt from the payment of debts. And the fourth section of the act of 21st February, 1845, provides: " When the person dying intestate shall at the time of his death be a housekeeper, the head of a family, and shall leave no widow, there shall be allowed to the children of the intestate residing with him (including all males under eighteen years of age, and all females) at the time of his death, the same amount of property as is allowed to the widow by this act, and the act to which this is an amendment."  The only question in this case is, whether the children, where the intestate was a widow who was at the time of her death a housekeeper, and the head of a family, shall take under the provisions of this section, the same as if the intestate had been a widower?  To me it seems exceedingly clear, that the children are entitled to take the property left by a mother the same as if left by a father. It cannot be denied that the mischief designed to be remedied, exists in the one case as much as in the other.  Ingenuity will seek in vain for a reason why the orphans should be left entirely destitute, where the family has been broken up by the death of a mother, any more than as if that calamity had happened by the death of the father.  They are at least equally entitled to the humane consideration of the legislature.  The creditors of the mother have no more just claim to take the last crumb from the mouths of the orphans, and turn them utterly destitute upon the world, than have the creditors of the father.  A man dies, leaving a family of children to whom certain property is set apart for their support.  At the next door, a woman dies, leaving also a family of children, who are turned into the street entirely destitute.  Is this the equality of our laws, and the equal justice of our legislature?  Why should those be protected and provided for, more than these?  We seek in vain for the object of such a discriminating policy, nor was it ever designed by the legislature.  It was urged upon the argument that if this claim of the

Lesher *v.* Wirth.

children be allowed, then two allowances are taken from the creditors instead of one; first, upon the death of the husband, when the allowance was made to the widow, and next, upon the death of the mother, when the children again take it.   But this is a misapprehension.   The creditors of the first intestate could never have any claim upon the estate out of which these children claim this allowance, and by their claim being sustained, those creditors suffer no loss.   Nor were the creditors of the mother injured by the allowance made to the widow upon the death of the husband.   The two allowances are not made from the same estate, but from two entirely separate and independent estates.   Take the case of a widow who moves into the state with her family after the death of her husband, and from a jurisdiction where no such allowance was made her.   If the claim in the present instance is to be denied, then would the claim of the children, in the case supposed, be denied also.

I think the case before us is clearly within the policy of the law, and the mischief designed to be remedied by the legislature, and this is certainly one important step gained in arriving at the true construction of a statute.   But it is said, and with truth, that the provisions of this fourth section do not in terms apply to the family and estate of a female intestate, and but for other provisions of our statutes, it might be difficult to apply it to such a case.   This act of the 21st of February, 1845, in which this fourth section is found, is, and professes in its title to be, an amendment to our statute of wills, and the rules prescribed for the construction of the statute of wills, apply to the amendatory act.   The seventy-sixth section of the statute of wills provides as follows: "And whenever any party in the singular number, or a male party is mentioned, the rule shall apply to a female or two or more having a joint interest, so far as the rule can be with propriety applied, and so far as is not otherwise directed."   And the twenty-eighth section of the ninetieth chapter of the Revised Statutes provides: " When any party or person is described or referred to by words importing the masculine gender, females as well as males, shall be deemed to be included."   By referring to the preceding and subsequent sections of that chapter it will be seen, that the rules of construction there given, are designed to apply not only to the Revised Statutes, but to all others, whether antecedent or subsequent statutes.   By these rules of construction thus positively given, we are required to read the feminine pronoun instead of the masculine, whenever it occurs in this fourth section, if there is no impropriety in applying the rule.   If it be true that we

advance the remedy and repress the mischief in the contemplation of the legislature when the law was made, by applying this rule of construction, then certainly there is no impropriety in making the application, but on the other hand there is a most manifest propriety in doing so. And we cannot, without imputing to the legislature the design to make a most arbitrary and unjust distinction, entertain a doubt that, but for the rule of construction thus previously given, they would have used words in the statute itself which would have included both male and female intestates. Indeed, it seems to me that the whole question in the code must turn upon the inquiry, Whether from the nature and character of the provision, there is a propriety and fitness in applying it to the children and estates of female as well as male intestates ; and if that is conceded or shown, the law is as positive as the legislature could make it, that it shall have such application. I have yet to hear the first reason suggested which I am capable of comprehending, why there is not as much propriety and fitness and justice in making a provision for the children of a female, as of a male intestate. We are not so to stick in the bark of a statute, and adhere to its literal expressions, as to impute to the legislature an arbitrary and senseless discrimination, when by a more penetrating and enlarged view of the legislative design, we are enabled to perceive a manifest justness and equality in the law. But in this case, when the law and the rules given us for construing it are taken together, no violence is done to the language of the law itself, in arriving at what I think was the policy and design of the legislature.

The judgment of the circuit court is affirmed.

TREAT, C. J., dissented.

*Judgment affirmed.*