NINA L. GILLETT

*v.*

AMARYLLIS T. GILLETT.

*Opinion filed February 17, 1904.*

1. ADMINISTRATION—*section 77 of Administration act applies though deceased householder was a widow.* Under section 77 of the Administration act, children residing with their widowed mother, who at the time of her death, intestate, was a house-keeper and the head of a family, are entitled to the same articles of property that they would take were such intestate a widower.

2. SAME—*age and financial condition of female child do not affect her right to specific award.* The fact that a female child residing with her widowed mother at the time of the latter's death, intestate, is over eighteen years of age and has an independent fortune does not defeat her right to a specific award under section 77 of the Administration act.

3. SAME—*word "family," used in section 74 of the Administration act, construed.* The word "family," used in section 74 of the Administration act with respect to the widow's right to household furniture and a year's provisions for herself and family, means such persons as constituted the family of the deceased at the time of his death, whether children or servants.

4. SAME—*fact that a daughter contributed towards household expenses does not defeat right to specific award.* That a daughter residing with her mother, by agreement contributed towards the household expenses, does not defeat her right to a specific allowance, under section 77 of the Administration act, where it is shown she sustained close relations of confidence and affection with her mother, who in no sense regarded her as a boarder.

5. ABSTRACT OF RECORD—*when additional abstract of record is unnecessary.* Where appellant's abstract of record sufficiently complies with the rules requiring the same to be an abridgment of the record, in which the evidence is condensed in narrative form so as to clearly present its substance, an additional abstract filed by the appellee which sets out the testimony in full is unnecessary, and its cost will not be taxed to appellant.

*Gillett* v. *Gillett*, 109 Ill. App. 126, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Logan county; the Hon. J. H. MOFFETT, Judge, presiding.

Mrs. Lemira P. Gillett, who was the widow of John D. Gillett, died testate on September 21, 1901. After her death the appraisers, appointed by the county court in the administration of the estate, set off to the appellee, Amaryllis T. Gillett, a daughter of Mrs. Lemira P. Gillett, an amount, equal in the aggregate to $2525.00, as a specific separate allowance. The appellant, Nina L. Gillett, filed five objections in the county court to the appraisement so made. The first, fourth and fifth of these objections were withdrawn, and the county court overruled the second and third objections, and approved the appraisement, and the specific allowance, to the extent of $2475.00, disallowing an item of $50.00 for family pictures, wearing apparel, jewels and ornaments. The third objection to the allowance to the appellee was, that it was excessive, and the result of a prejudiced and interested appraisement on the part of the appraisers; but this objection has been abandoned, or is not now insisted upon by the appellant in the argument made before this court.

The second objection made to the appraisement was to the effect that the appraisers set off to the appellee, Amaryllis T. Gillett, a total of $2475.00, as an allowance to her as a female child of Lemira P. Gillett, whereas, as it is alleged in the objection, "she was a daughter of Lemira P. Gillett past forty years of age, of independent fortune, without family and boarding with her mother for a compensation, and had no other or further rights than those of a daughter and boarder in the family; that she is not such a person contemplated by the statute as is entitled to an award against said estate."

Appellant took an appeal from the order of the county court of Logan county, approving the report of the appraisers, to the circuit court of that county. After appeal to the circuit court, the parties waived the intervention of a jury, and submitted the case by consent to the court for trial without a jury. The circuit court upon the trial

affirmed the judgment and order of the county court, refusing to give certain propositions of law asked by the appellant, and giving those asked by appellee. Thereupon, the objector, being the present appellant Nina L. Gillett, took an appeal to the Appellate Court, and the Appellate Court has affirmed the judgment of the circuit court. The present appeal is prosecuted from such judgment of affirmance.

Upon the trial before the circuit court, the appellant asked that court to hold as a proposition of law in the decision of the case, as follows: "If it appears from the evidence that, during the lifetime of Lemira P. Gillett, her daughter Amaryllis T. Gillett, who was about the age of forty-four years, and had an independent fortune in her own right of between $200,000.00 and $250,000.00, with a yearly income of between $12.000.00 and $15,000.00 per annum, made her home with her mother, occupying no position of dependence upon her mother, then the law is that out of her mother's estate Amaryllis T. Gillett is not entitled to a specific allowance." This proposition was refused by the circuit court. The court, at the request of appellee, held as law in the decision of the case propositions of law to the following effect, to-wit: "That Amaryllis T. Gillett, to whom specific allowance was made, was residing with her widowed mother at the time of the decease of the mother; that, while she was required by the mother to contribute a stated amount annually toward maintaining the household expenses, and sustaining the church organization, to which they belonged, she was never treated as a boarder, and was not such; that she ever maintained toward her mother that same close family relation of mother and daughter that she did, while the father was living, and that her relations were not changed after the father's death; she was in the family as a daughter, to devote her time when at home, and her energies for the comfort and enjoyment of her mother, to aid in supplying the many wants that

will arise in the declining years and in sickness, and the question of age and financial standing does not affect the right of a female person, so standing, to the right to claim a specific allowance."

BLINN & HARRIS, and BEACH, HODNETT & TRAPP, for appellant:

In construing a statute the intention of the legislature should be ascertained, and such a construction given as will carry out the true intention. Starr & Cur. Stat. chap. 131, sec. 1; *Hogan* v. *Aiken*, 181 Ill. 448.

A thing within the intention is within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention. *People* v. *Chicago*, 152 Ill. 546; *Castner* v. *Walrod*, 83 id. 179.

In construing a statute courts are not confined to the words used but may regard the purpose, and, when necessary to give effect to the meaning of the law, words may be rejected and others substituted. *Railway Co.* v. *People*, 144 Ill. 458; *Perry County* v. *Jefferson County*, 94 id. 214; *Castner* v. *Walrod*, 83 id. 179.

In Pennsylvania, where the statute provided that "the widow or child of any decedent may retain either real or personal property to the value of $300, the same shall not be sold, but suffered to remain for the use of widow and family," it was held, although not limited to minors, not to apply to adult children having independent means of living. *Halby's Estate*, 20 Phila. 117; *Young's Estate*, 3 Pa. Dist. 758; *Barr's Appeal*, 1 Mona. 764.

A similar statute in Alabama was held not to apply to adult children having other means of support. *Child* v. *Jones*, 60 Ala. 352; *Henderson* v. *Tucker*, 70 id. 38; *Compton* v. *Perkins*, 92 Tenn. 715.

The statute providing for so-called widow's allowance was passed to prevent the widow and children becoming a charge upon the eleemosynary institutions of the State. *Phelps* v. *Phelps*, 72 Ill. 548.

This beneficent act was directed to the objects of the tenderest care of the law, and should not be perverted to purposes or objects not contemplated by its framers. *Veile* v. *Koch*, 27 Ill. 129.

The words of the statute, "residing with him at the time of his death," should be construed to mean in some dependent relation for support, and not to adults having an independent fortune. See cases cited above.

The words "all females," used in the statute, mean all females under eighteen years of age.

HOBLIT & SMITH, for appellee:

Under the provision of section 77 of chapter 3 of the Revised Statutes of Illinois, the child or children of a deceased widow who dies a house-keeper and the head of a family are entitled to the same specific allowance of personal property that they would take if the deceased were a widower. Horner on Probate Law, sec. 13, p. 17; *Lesher* v. *Wirth*, 14 Ill. 39; *Silver* v. *Ladd*, 7 Wall. 219.

The benefits of this statute, by its express terms, are conferred upon all female children residing with the deceased at the time of his or her death, without any qualifying words whatever as to age, financial condition or otherwise. To hold otherwise it would be necessary to add to or take from the plain and unambiguous language used. Starr & Curt. Stat. chap. 3, sec. 77, p. 313; *Strawn* v. *Strawn*, 53 Ill. 263; *Wolford* v. *Deemer*, 89 Ill. App. 524.

This statute should receive, and has always received, at the hands of the courts of the State, a liberal construction as to the amount to be awarded to its beneficiaries and also as to the class of persons entitled to its benefits. *Strawn* v. *Strawn*, 53 Ill. 263; *Wolford* v. *Deemer*, 89 Ill. App. 524; *Veile* v. *Koch*, 27 Ill. 129.

In fixing the amount of a specific allowance under the statute, regard must be had to the fortune of deceased and to her mode of living and station in life. *Strawn* v. *Strawn*, 53 Ill. 263; *Wolford* v. *Deemer*, 89 Ill. App. 524.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question, presented by this record, relates to the construction, as applied to the facts of this case, of section 77 of chapter 3 of the Revised Statutes in regard to the administration of estates. Section 77 is as follows: "When the person dying is at the time of his death a house-keeper, the head of a family, and leaves no widow, there shall be allowed to the children of the deceased, residing with him at the time of his death, (including all males under eighteen years of age, and all females,) the same amount of property as is allowed to the widow by this act." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 313).

By the literal terms of this statute reference is made to a widower, who is at the time of his death a house-keeper and the head of a family. In *Lesher* v. *Wirth*, 14 Ill. 39, it was held that the children of a widow, who dies intestate, a house-keeper and the head of a family, shall take the same articles of property that they would take if the intestate was a widower.

John D. Gillett died testate at his home near Elkhart in Logan county in August, 1888, leaving a very large estate, worth more than $1,000,000.00. At the time of his death he left a widow, Lemira P. Gillett, and four unmarried daughters, to-wit, appellant, Nina L. Gillett, appellee, Amaryllis T. Gillett, (usually called Amy in the family), Jessie D. Gillett, and Charlotte L. Gillett. Two or three years after the death of John D. Gillett, his daughter, Charlotte L. Gillett, was married to Dr. William Barnes, of Decatur. The only other children of John D. Gillett, who were living at the time of the death of Mrs. Lemira P. Gillett, were two married daughters, Mrs. Emma G. Oglesby and Mrs. Katherine G. Hill. The four unmarried daughters lived with their father at the family homestead near Elkhart during his lifetime, and upon his death his wife continued to occupy and live in

the family homestead as her home; and with her these four daughters lived and made their home, she being the head of the family. After her marriage, Mrs. Barnes left the home. The appellant, Nina L. Gillett, left the home about the year 1897, and was abroad for a number of years. In May, 1900, Jessie D. Gillett left the home on account of the conduct of her brother, John P. Gillett, who was then living with his mother. The appellee, Amy T. Gillett, continued to live with her mother up to the time of the latter's death. John P. Gillett died on September 8, 1901, and Mrs. Lemira P. Gillett died in about two weeks thereafter. The appellee, Amy T. Gillett, went abroad in January, 1900, but returned on July 3, 1900, at the request of her mother. After Jessie D. Gillett left the homestead in May, 1900, Mrs. Gillett was alone with her son, John, who owned the homestead under the will of his father. He was addicted to the habitual use of intoxicating liquors, and when under their influence was quarrelsome and abusive. After his sister, Jessie, left the homestead on account of his conduct, and while his mother was left alone with him in the homestead, she expressed a desire that her daughter, Amy, should return from Europe, and appellee accordingly did so, remaining in the homestead from the date of her return on July 3, 1900, up to the death of her mother on September 21, 1901, with the exception of three brief visits away from home made during that time with the consent of her mother, and while her brother was absent. The evidence tends to show that, for more than a year before the death of Mrs. Gillett, the appellee took care of her mother, and of her brother so far as she could, and of the house. She employed, trained and paid the servants; attended to purchasing and paying for household supplies; looked after the linen; superintended the making of the garden; drew checks in her mother's name to make payments of various kinds; superintended the erection and painting of buildings; attended to her mother's wishes in employ-

ing the minister, who had charge of the church built by her mother, and waited on her sick brother.

Mrs. Gillett had an income said to have been from $15,000.00 to $18,000.00 per year. Under her husband's will, she had a life interest in some 4000 acres of land, and also a considerable amount of personal property. Each of the children had a large estate inherited from their father. Appellee is admitted to have been worth about $250,000.00, and to have had an income from her own property of from $12,000.00 to $15,000.00 annually. Some sort of an arrangement was made prior to 1897, or about that year, at the suggestion of the son, John P. Gillett, by the terms of which each of the unmarried daughters contributed $500.00 a year in semi-annual payments of $250.00 each to their mother towards the household expenses of the home. At her request they each also paid to her $100.00 per year for the support of the Episcopal church, which she had built.

It is clearly proven that Mrs. Gillett at the time of her death was a house-keeper, and the head of a family, and was a widow; and that appellee, Amy T. Gillett, was her female child, and resided with her at the time of her death. Therefore, under the strict letter of section 77, as above quoted, there was properly allowed to her "the same amount of property [or the money value thereof] as is allowed to the widow by this act." In the first place, it is insisted by the appellant that appellee is not such a child of the deceased, Lemira P. Gillett, as is contemplated by section 77, because she is not under eighteen years of age. The statute does not refer exclusively to females, who are under eighteen years of age. The language is: "There shall be allowed to the children of the deceased, residing with him at the time of his death, (including all males under eighteen years of age, and all females), the same amount of property as is allowed to the widow by this act." The children, who are brought within the terms of the section, include all males

under eighteen years of age and "all females." The fact, that the males to be included are specifically mentioned as being under eighteen years of age, while the words, "all females," are used without any qualification, clearly indicates that the legislature intended to refer to females without reference to what their ages might be. If it had been the intention of the legislature to include only females under eighteen years of age, then the words, "under eighteen years of age," would have been made to qualify females, as well as males.

In the second place, it is claimed that the statute only refers to dependent females, and those, who need the aid of the widow for their support. It is, therefore, claimed that the appellee is not included within the meaning of section 77, because she had an independent fortune, and a large income of her own, and was, therefore, in no way dependent upon her mother. The section does not use the words "dependent females," nor is there any language in the section, which seems to restrict the allowance, there provided for, to dependent females. There is nothing in the statute, which excludes from the allowance female children, who may have had property or incomes of their own.

In ascertaining the meaning of a statute the intention of the legislature is to be sought for. Where terms are ambiguous and doubtful, rules of construction are applied to determine that intention, and statutes *in pari materia* with the statute under consideration are referred to. But where the language of the statute is plain and unambiguous, there is no necessity for resorting to rules of construction, and the statute must have an interpretation according to the plain and ordinary meaning of the words used. "In the enactment of statutes, the rule of interpretation is, in respect to the intention of the legislature, that where the language is explicit, the courts are bound to seek for the intention in the words of the act itself, and they are not at liberty to suppose or to hold,

that the legislature intended anything different from what their language imports." (Potter's Dwarris on Statutes, pp. 144, 146, par. 20). "When, indeed, the language is not only plain, but admits of but one meaning, the task of interpretation can hardly be said to arise (and 'those incidental rules which are mere aids, to be invoked when the meaning is clouded, are not to be regarded.') * * * The legislature must be intended to mean what it has plainly expressed, and consequently there is no room for construction." (Endlich on Interpretation of Statutes, p. 6, sec. 4). "Where the language of the statute is plain and explicit, it cannot be controlled by the rule *in pari materia*." (Endlich on Interpretation of Statutes, sec. 53, p. 67). In *Ottawa Gas Light and Coke Co.* v. *Downey*, 127 Ill. 201, we said: "Courts cannot, as a general rule, disregard the plain language of a statute. It is their duty to accept it as they find it and enforce it as plainly written." Again, in *Wunderle* v. *Wunderle*, 144 Ill. 40, we said: "It is not the province of the judiciary to make laws, but to construe and interpret them and pass upon their validity."

By section 77, the children therein named are allowed the same amount of property, "as is allowed to the widow by this act." When we turn to section 74 of the Administration act, we find that the widow is allowed certain articles of property, or their value in money, such as beds, bedsteads, bedding and household and kitchen furniture, necessary for herself and family, and provisions for a year for herself and family. The report of the appraisers in this case mentions each of the specific articles allowed under the proper head, and the value of the same. In passing upon the meaning of the allowance thus made, which is the same as the allowance to be made to the children named in section 77, we held in *Strawn* v. *Strawn*, 53 Ill. 263, that the statute, providing for an allowance to a widow of such beds, bedsteads, bedding and household and kitchen furniture as might

207—10

be necessary for herself and family, and provisions for a year for herself and family, was not to be construed in regard to the character and amount of such allowance, without reference to the circumstances of the parties, but that, in fixing such allowance, the appraisers should take into view the condition and mode of life in which the widow was left by the death of her husband, and should regard, as necessary, that furniture, which is the ordinary and appropriate furniture for such homesteads. In that case we said (p. 274): "It cannot be supposed that the legislature, when it used the words 'necessary furniture,' and 'provisions for a year,' designed to use the words in a rigid and unbending sense, to be construed in all cases without reference to the circumstances of the parties. If that were so, we should be obliged to say that many articles of furniture to be found in all comfortable houses, were not absolutely indispensable, and that the provisions for a year might be reduced to a certain amount of bacon and corn meal. * * * So, too, in regard to the word, 'family.' Inasmuch as the children of the appellee were all of age, although some of them were still members of the maternal family, it is claimed that the provisions allowed should only be such, as would be required for the sustenance of the widow alone. But we are of opinion the legislature intended, by the word 'family,' to include such persons, as constituted the family of the deceased at the time of his death, whether servants, or children, who had attained their majority." It cannot be said that the allowance here made of $2475.00 was extravagant in view of the size of the estate and of the circumstances of the parties.

It is furthermore claimed on the part of the appellant that, because the appellee contributed $500.00 per year in semi-annual payments towards the household expenses, as did the other unmarried daughters while they lived with their mother, the appellee thereby became a mere boarder, and that, for that reason, she is not entitled to

the award.   We do not think that the contribution, so
made towards household expenses, was a compensation
for board.   Notwithstanding such payment, the appellee
constituted one of the private household of her deceased
mother.   The evidence shows that the homestead, occu-
pied by Mrs. Gillett, was a large house, and had in it
upwards of eighteen rooms, and that each one of the
daughters above named, before the death of their father
and after his death, occupied one room in the house, and
had one horse, and had the use of the family carriages.
In view of the wealth and position of the family, it can
not be said that the small contribution thus made was in-
tended to be an equivalent for board.   The design of the
statute was "to enable the widow to keep what death had
spared of her domestic circle unbroken during that time
notwithstanding the loss of her husband."   (*Strawn* v.
*Strawn, supra.*)   The mere fact, that her children chose to
contribute a small sum towards the family expenses, and
another small sum towards the support of the church
the widow had erected at her own expense upon her
premises, did not show that they were boarders in the
sense, in which that term is used in the case of *Strawn*
v. *Strawn, supra.*

In *Wolford* v. *Deemer*, 89 Ill. App. 524, one of the Appel-
late Courts in this State has held that, where one, at the
time of his death, is a house-keeper, and the head of a
family consisting of himself and a daughter, and leaves
no widow, the daughter is entitled to an allowance out
of the estate under section 77; and that this right is not
defeated by the facts that the daughter is an adult and
a widow; that while her husband was alive she did not
live at her father's home; that she returned thereto at
her father's request; that he agreed to pay her $2.00 a
week for her services at home; that she owned prop-
erty, and had an income from other sources; and that
she shared equally with her brothers and sisters under
her father's will.

It appears from the evidence that Mrs. Gillett, early in the month of July, 1901, and about three months before her death, left her home and went north to Mackinac Island for a summer vacation, and that, when she left home, she left her daughter, the appellee, in charge of the homestead, and handed to her a written order, dated July 1, 1901, which order, signed by Mrs. Gillett, is in the following terms, to-wit: "This is to certify that I leave my daughter, Amy, in full charge of my house, help, and all pertaining to the premises in my absence this year." She directed appellee to draw checks in her name upon her own account in the bank in Elkhart, and those checks were so drawn by appellee and are shown in the record. When Mrs. Gillett went north in July, 1901, she not only left appellee in charge of the house, but also in charge of her son, John P. Gillett, and of the entire household. Moreover, there is some evidence, tending to show that, some time before the death of Mrs. Gillett, she released appellee from the obligation to pay the contribution of $500.00 towards family expenses. Upon this subject there is some conflict in the evidence, but inasmuch as the trial court saw the witnesses and heard their testimony, we are not disposed to interfere with its finding upon this subject. There are in the record quite a number of letters, some twenty-one in number, written by Mrs. Gillett to appellee, beginning in July, 1898, and ending August 30, 1901, shortly before the widow's death, which show that relations of confidence and affection existed between appellee and her mother. They show that she had full charge of her mother's home during her mother's absence, and was authorized to give directions to servants and nurses, and look after her sick brother, and his room. It clearly appears from these letters, and the other testimony, that she was in the family as a daughter, and bore the same close family relation, as a daughter to Mrs. Gillett, as existed between them while the father was living, thus

devoting her time and energies, when at home, for the comfort and enjoyment of her mother, and it cannot be said that she bore the relation to the household of a mere boarder.

Reference is made by counsel for appellant to authorities in other States, giving the same construction to statutes there, as is contended for on behalf of appellant here. But an examination of the statutes, so construed by such decisions, will show that they differ from the Illinois statute in providing for exemptions in favor of minors, or restricting their benefits to minors. But in *Barr's Appeal*, 1 Monaghan, 768, it is said: "The Act of Assembly gives to the widow, or the children of a decedent, the right to retain $300.00 out of the decedent's estate. The act fixes no age or circumstances, which shall deprive the children of a right so to claim. This court, in view of the spirit of the law, has held that an adult child, living apart from the father's family, and not dependent on him for support, is not entitled to claim under the statute. Here, the appellee always lived with her father, the decedent, as a member of his family. She continued with him after she arrived at the age of twenty-one, just as she had before. She remained as a child, not as a servant. The language of the act does not bar her claim. The spirit and purpose thereof, in providing this sum for the family, give it to her. She fills the requirement of the statute." Inasmuch as section 77 assimilates the award to the children to that allowed to the widow by the act, and inasmuch as the widow takes without regard to dependence, we are of the opinion that an adult child, like appellee, may take without regard to dependence, where the family relation exists, and where the facts mentioned in section 77 exist.

Appellee has filed herein what her counsel call an additional abstract, and makes a motion that the cost and expense of the additional abstract, so filed by appel-

lee, be taxed as costs against appellant. This motion is denied. What is called an additional abstract is in fact a copy of the testimony, printed in full, of all the witnesses, who testified upon the trial, except one. The abstract, required by the rules of this court, is an abridgment of the record, and in it the evidence should be condensed in narrative form, so as to clearly and concisely present its substance. We think that the abstract, filed by the appellant, complies with the rule, and that the additional abstract, if it may be so called, filed by the appellee, was not necessary.

For the reasons above stated, we are of the opinion that the allowance made by the circuit court was proper. And accordingly the judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*